**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:24-cv-12933** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INFOSYS LIMITED,** | ) | **Judge Andrea R. Wood** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION

Defendant, Infosys Limited ("Defendant"), by and through undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* and Federal Rule of Civil Procedure 12(b)(3), hereby respectfully submits its Motion to Compel Arbitration and Dismiss or Stay the Action.

## PRELIMINARY STATEMENT

Plaintiff, Venkateswara Rao Addepalli ("Plaintiff"), a former employee of Defendant, Infosys Limited ("Company"), alleges that the Company discriminated against him on the basis of national origin, failed to stop harassment against him, and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.

This dispute is subject to a valid and enforceable arbitration agreement, which clearly advised Plaintiff that he was waiving certain rights and explained that arbitration would be the sole and exclusive forum for any remedies against the Company. Indeed, by executing the arbitration agreement, the parties waived "ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR JURY OF ANY ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT." The arbitration agreement conspicuously provides that covered disputes include claims related to discrimination, harassment, and

retaliation, under local, state, and federal statutes, including Title VII and 42 U.S.C. § 1981, the lone statutes for which Plaintiff attempts to assert liability against the Company in this lawsuit. Therefore, the arbitration agreement applies to all claims made against the Company here.

Instead of honoring his written commitment, Plaintiff filed this Complaint in the United States District Court for the Northern District of Illinois. And he has refused the undersigned counsel's request to voluntarily proceed in arbitration. In light of the overriding public policy in favor of arbitration under both Illinois and Federal law, the existence of a valid and enforceable arbitration agreement, and the clear applicability of the arbitration agreement to Plaintiff's claims, this Court should grant the Company's motion to dismiss the Complaint, or alternatively, stay the litigation and compel arbitration between the parties.

## STATEMENT OF FACTS

On October 30, 2019, the Company provided Plaintiff with an offer of employment to serve as Lead Consultant in the Company's Vernon Hills, Illinois location. (Ex. A, Declaration of Claiborne ("Claiborne Decl."), Ex. B, Offer of Employment). Notably, the offer letter explicitly stated that Plaintiff's employment with the Company was contingent upon Plaintiff's reading, understanding, and accepting a Mutual Arbitration Agreement, which was appended to the offer letter ("Arbitration Agreement"). (Ex. A, Claiborne Decl.; Ex. C, Mutual Arbitration Agreement). The Company provided Plaintiff with an opportunity to review the Offer of Employment and Arbitration Agreement by providing five business days within which to submit his acceptance. (Ex. B, Offer of Employment).

Plaintiff digitally accepted the offer and its attachments (including the Mutual Arbitration Agreement) on October 30, 2019. (Ex. A Claiborne Decl.; Ex. D, Acceptance of Offer of Employment).

The Arbitration Agreement provides, in pertinent part, that "Infosys and Signer agree to resolve covered claims and disputes as provided for in this Agreement before a neutral arbitrator" and "All disputes covered by this Agreement between Signer and Infosys shall be decided by a neutral arbitrator in an arbitration proceeding and not by a judge or jury in a court proceeding." (Ex. C, Mutual Arbitration Agreement). The Agreement also provides that the parties "understand and agree that the Arbitrator's decision will be final and binding on both Infosys and the Signer [.]" (*Id.*). The Arbitration Agreement applies to "all claims, disputes, or controversies, past, present, or future, including without limitation, ***claims that arise out of or relate to Signer's recruitment, employment, or separation from employment with Infosys*** [.]" (*Id.*) emphasis added). Additionally, the Arbitration Agreement provides specific examples of covered disputes as follows:

> II. DISPUTES AND CLAIMS COVERED BY THIS AGREEMENT
>
> . . . Unless specifically excluded below, this Agreement applies, without limitation, to any claims based upon or related to ***discrimination, harassment, retaliation***, defamation (including claims of post-employment defamation or retaliation) . . . The Agreement specifically covers, without limitation, all claims arising under ***Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, 42 U.S.C. § 1981***. . . each as amended, any state or local statutes, if any, addressing the same or similar subjects, and any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Disputes and Claims Not Covered by this Agreement."

(*Id.*). Furthermore, the Arbitration Agreement specifies that it is governed by the Federal Arbitration Act ("FAA"). (*Id.*).

The Arbitration Agreement is comprehensive and contains numerous provisions to ensure claims are resolved through individual arbitration in a manner that is fair to claimants and does

not deprive them of the relief they would otherwise recover in court. (*Id.*). For example, the Arbitration Agreement allows for any demand for arbitration to be filed within the statute of limitations under applicable law. (*Id.*). Moreover, "Infosys will pay the Arbitrator's and arbitration fees and costs, except for the filing fee, if any, as required by the organization through which the arbitration is conducted." (*Id.*). The Arbitration Agreement states that the arbitration will be conducted in accordance with the American Arbitration Association Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"). (*Id.*). The Arbitration Agreement calls for the parties to select an arbitrator by mutual agreement. (*Id.*). And, the Arbitration Agreement provides that the arbitration shall take place in the county in which Plaintiff "applied to work, works, or worked at the time the dispute or claim arose." (*Id.*).

The arbitration agreement permits written and oral discovery and will apply the Federal Rules of Civil Procedure to resolve discovery disputes. The arbitrator has jurisdiction to hear and rule on pre-hearing disputes, to hold pre-hearing conferences, and to entertain motions to dismiss and motions for summary judgment. (*Id.*).

The concluding section of the Arbitration Agreement, entitled "Knowing and Voluntary Agreement," states in capitalized, unambiguous writing:

> WE UNDERSTAND AND AGREE THAT WE HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY OF OWN CHOOSING BEFORE ACCEPTING THIS AGREEMENT (THROUGH SIGNATURE OR ELECTRONIC ACCEPTANCE), AND WE HAVE HAD AN OPPORTUNITY TO DO SO. BY ACCEPTING THIS AGREEMENT, WE ACKNOWLEDGE WE HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND WE ARE WAIVING ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR JURY OF ANY ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT.

(*Id.*). Plaintiff accepted and agreed to the Arbitration Agreement when he electronically accepted his Offer of Employment, including its attachments, on October 30, 2019. (Ex. B, Acceptance of Offer of Employment).

Notwithstanding the parties' agreement to arbitrate, Plaintiff filed the instant lawsuit on January 2, 2025. (Dkt. 1). In his Complaint, Plaintiff alleges statutory claims of discrimination on the basis of national origin, harassment, and retaliation in violation of Title VII and 42 U.S.C. § 1981. Plaintiff's claims are indisputably covered under the clear and unambiguous terms of the Arbitration Agreement that he signed, and, therefore, the claims must be submitted to binding arbitration.

## ARGUMENT

### I. A Motion to Compel Arbitration is Properly Brought under Rule 12(b)(3)

As a preliminary matter, this Motion to compel arbitration is properly brought as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Jackson v. Payday Fin, LLC*, 764 F.3d 765, 773 (7th Cir. 2014) ("In the Seventh Circuit, motions to dismiss and compel arbitration are properly brought under Rule 12(b)(3) of the Federal Rules of Civil Procedure).

### II. Plaintiff Must Arbitrate His Claims in Accordance With the Arbitration Agreement.

Federal law, Illinois law, and public policy all strongly favor arbitration. The FAA, which governs employment-related arbitration agreements (and governs this one, under the express terms of the Arbitration Agreement), was enacted "in response to widespread judicial hostility to arbitration agreements," *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted), and establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Gore v.*

*Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (the FAA "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.") (internal citations omitted). In the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*. 465 U.S. 1, 10 (1984).

"[T]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC*, 131 S. Ct. at 1748 (internal citations omitted). Section Two of the FAA mandates that any agreement to settle a dispute by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In line with these principles, courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC*, 131 S. Ct. at 1745 (internal citations omitted); *see also Hartz v. Brehm Preparatory Sch., Inc.*, 2021 Il App (5th) 190327, ¶ 41, 183 N.E. 3d 172, 183. The FAA requires courts to compel arbitration of disputes governed by an arbitration agreement and pre-empts any countervailing state law. *See* 9 U.S.C. § 4.

Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*. 460 U.S. at 24-25. Indeed, the Supreme Court has recognized that "there are real benefits to the enforcement of arbitration provisions." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-23. Further, the Court has specifically rejected the notion that "the advantages of the arbitration process somehow disappear when transferred to the employment context." *Id.* at 123 (citation omitted).

In keeping with the liberal federal policy favoring arbitration, the United States Supreme Court has repeatedly struck down attacks on the enforceability of arbitration agreements. *See, e.g., Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1632 (2018) ("Congress has instructed that arbitration agreements like those before us must be enforced as written."); *see also, e.g., Circuit City Stores*, 532 U.S. at 122-123 (2001) (enforcing arbitration agreement signed during employee's application process with respect to claims brought under California's anti-discrimination statute); *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20 (1991).

Even if the FAA did not apply here (and it does) Illinois follows the FAA's lead and similarly has a strong public policy favoring arbitration. *See, e.g.*, *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1004 (N.D. Ill. 2013) ("The Illinois General Assembly clearly shares with Congress the same favorable view of arbitration agreements and their enforcement, as evidenced by its enactment of the Illinois Uniform Arbitration Act."); *GPS USA, Inc. v. Performance Powdercoating*, 2015 IL App (2d) 131190, ¶ 17, 26 N.E.3d 574, 579 ("It is a well-established principle that arbitration is a favored alternative to litigation by state, federal and common law because it is a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions.") (internal citations omitted); *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13, 260 Ill. Dec. 541, 761 N.E.2d 721 (2001) ("The Illinois Uniform Arbitration Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes."); *Hartz,* 2021 Il App (5th) 190327, ¶ 41, 183 N.E. 3d 172, 183; *Fahlstrom v. Jones*, 2011 IL App (1st) 103318, ¶ 16, 952 N.E.2d 1227, 1230.

The Illinois Legislature codified its endorsement of arbitration agreements in the Uniform Arbitration Act ("UAA"), 710 ILCS 5/1 *et seq.*, which, similar to the FAA, provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written

contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract [.]" 710 ILCS 5/1. The UAA, like the FAA, compels the enforcement of agreements to arbitrate such as the Arbitration Agreement in this case.

Thus, an agreement to arbitrate disputes is enforceable to the same extent as all other contracts under state law and cannot be subjected to more burdensome requirements. *Hartz*, 2021 Il App (5th) 190327, ¶ 41, 183 N.E. 3d 172, 183 ("An arbitration agreement is a matter of contract, and like any other contract, the principles of state contract law apply."); *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, ¶ 20, 207 N.E.3d 1015, 1022 ("[Illinois] legislature, by adopting the Arbitration Act has placed arbitration agreements on equal footing with other contractual promises.").

Specifically, state and federal courts in Illinois have repeatedly held that arbitration agreements requiring the arbitration of employment-related disputes are fully enforceable and treated the same as any other dispute. *See, eg., Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004); *Johnson*, 928 F. Supp. at 1005(compelling arbitration of claims under Title VII and the Illinois Human Rights Act).

On a motion to compel arbitration under the FAA, the movant needs to demonstrate three elements: "(1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 783 (N.D. Ill. 2021); *see also Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 796 (N.D. Ill. 2024) ("disputes regarding the enforceability of an arbitration agreement, are 'presumptively for courts to decide.'") (internal citations omitted); *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21, 48 N.E.3d 759, 766 ("When presented with a motion to compel under [the

FAA], the trial court's inquiry is limited to certain gateway matters, such as whether the parties have a valid written agreement to arbitrate at all, and if so, whether the issues in dispute fall within the scope of the arbitration agreement.").

**A. <u>A Written Agreement to Arbitrate Exists.</u>**

Here, there is no dispute that the Parties have a clear and valid written Arbitration Agreement that was mutually agreed upon by both Parties when the Company made its Offer of Employment to Plaintiff and Plaintiff accepted the Offer, thereby agreeing to the Arbitration Agreement. (Ex. D, Acceptance to Offer Letter).

Further, the Arbitration Agreement provides a detailed description of the arbitration process, outlines how the Plaintiff should file a claim, how the arbitrator is selected, the relief available in arbitration, the effect of the arbitration award, and the law governing the arbitration. The Arbitration Agreement also specifies that the AAA is the organization that the parties must use to administer the arbitration. Thus, the Arbitration Agreement goes above and beyond what is required by the courts and properly informed Plaintiff that arbitration would govern all claims arising out of his playing with the Company.

There is no confusion surrounding Plaintiff's receipt and assent to the Arbitration Agreement. Plaintiff was provided with ample time to review the Arbitration Agreement and expressly assented to its terms when he accepted his Offer Letter and its attachments. (Ex. D, Acceptance of Offer Letter). The Arbitration Agreement unquestionably informed Plaintiff that he had waived his right for his claims to be heard in court and to a jury and that instead, his claims would be subject to arbitration.

**B. <u>Plaintiff's Claims are Within the Scope of the Arbitration Agreement.</u>**

In determining whether the dispute falls within the scope of the Arbitration Agreement, the Court should "give effect to the intent of the parties," which is best demonstrated by the plain

and ordinary language of the agreement. *Clark v. Foresight Energy, LLC*, 2023 IL App (5th) 230346, ¶ 17, 228, N.E.3d 988, 993-94. If the agreement language clearly indicates that the dispute falls within the scope of the arbitration clause, the Court must compel arbitration. *Id.; Sullivan v. Martinez*, 2020 IL App (1st) 200840-U, ¶ 26. To the extent the Court finds the language unclear or ambiguous, such doubt "should be resolved in favor of arbitration." *Varma v. TCC Wireless, LLC*, 478 F. Supp. 3d 724, 729 (N.D. Ill. 2020). "Generic" arbitration clauses are "construed broadly" and lead courts to conclude that parties are obligated to arbitrate disputes arising under that provision. C*lark*, 2023 IL App (5th) 230346, ¶ 17, 228 N.E.3d 988, 993-94. A generic arbitration clause is one that is "nonspecific in designating what issues should be arbitrated and is characterized by language providing that all claims 'arising out of' or 'relating to' the contract shall be decided by arbitration." *Id.* (arbitration clause that contained "arising out of" language and also contained "'regarding the matters set forth herein'—a variation of the 'relating to' language" qualified as generic and one that compelled arbitration); *Fahlstrom*, 2011 IL App (1st) 103318, ¶ 16, 952 N.E.2d 1227, 1230.

Here, the allegations in the Complaint indisputably arise directly from Plaintiff's employment relationship with the Company, and as such, are subject to arbitration. The Arbitration Agreement contains a generic arbitration clause because the Agreement states that it covers all "claims, disputes, or controversies, past, present, or future, including without limitation, claims that ***arise out of or relate to*** Signer's recruitment, employment, or separation from employment with Infosys [.]" (Ex. C, Arbitration Agreement) (emphasis added). The language is not unclear or ambiguous and thus yields that Plaintiff's claims must be arbitrated. *Oblix,* 374 F.3d at 490 (7th Cir. 2004) (compelling arbitration when arbitration agreement stated "any dispute or controversy arising out of or relating to any interpretation, construction,

performance or breach of this [Employment] Agreement, shall be resolved exclusively by binding arbitration."). The Agreement also expressly states that claims brought under Title VII and 42 U.S.C. § 1981 are within the scope of the Agreement. Plaintiff brings claims for discrimination, harassment, and retaliation under these statutes, and such claims are expressly outlined as stemming from Plaintiff's employment with the Company. Indeed, the Arbitration Agreement also outlines disputes and claims that are *not* covered under it, and Plaintiff's claims under Title VII and 42 U.S.C. § 1981 are not under that exhaustive and clearly defined list. Thus, the Arbitration Agreement between the parties is dispositive of this issue and mandates that Plaintiff's claims be submitted to arbitration.

As a result, Plaintiff's lawsuit against the Company must be dismissed or alternatively stayed and the matter must be compelled to arbitration.

### C. Plaintiff Refuses to Arbitrate

On January 27, 2024, the undersigned counsel informed Plaintiff, via email, of the Company's intent to enforce its rights under the Arbitration Agreement and requested that he voluntarily assent to proceed in private arbitration. Plaintiff has, to date, declined to proceed in private arbitration.

## II. The Court Should Dismiss This Matter and Compel Plaintiff to Arbitrate His Claims.

Since Plaintiff clearly agreed to arbitrate his pending claims, both the FAA and UAA require the Court to compel arbitration and dismiss or stay this proceeding. The FAA provides that compelling arbitration is mandatory when the issue involved in the lawsuit is encompassed by the arbitration agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such

> suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .

9 U.S.C. § 3 (emphasis added).

Significantly, the FAA does not vest any discretionary authority in the Court to decide whether to allow a case to proceed in Court versus arbitration. Rather, the Court need only satisfy itself that there is a "valid arbitration agreement and the parties' dispute falls within the scope of that agreement." 9 U.S.C. § 3; *Travis v. Am. Mfrs. Mut. Ins. Co.*, 335 Ill. App. 3d 1171, 1175, 782 N.E.2d 322, 325 (2002). Once that determination is made, "arbitration is mandatory and the trial court must compel it." *Travis*, 782 N.E.2d at 325; *Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 369 (7th Cir. 1999).

Consequently, under the FAA and established Illinois case law, the Court must dismiss (or, minimally, stay) this lawsuit in accordance with Plaintiff's agreement to arbitrate his claims. While the Supreme Court recently held that a stay rather than dismissal was appropriate where the Court finds an arbitrable dispute *and a party requests a stay* under section 3 of the FAA (*Smith v. Spizziri*, 601 U.S. 472 (2024)), this motion is distinguishable from *Spizziri*, and dismissal is still appropriate, because (1) it is brought under Federal Rule of 12(b)(3) and (2) it seeks dismissal as its primary form of relief rather than a stay. 601 U.S. at 475 ("When a federal court finds that a dispute is subject to arbitration, *and a party has requested a stay of the court proceeding pending arbitration*," the court must dismiss the action rather than stay); *see also Sunee Greenhill v. R.V. World, LLC*, 727 F. Supp. 3d 798, 811 (S.D. Ill. 2024) ("In the Seventh Circuit, motions to dismiss and compel arbitration are properly brought under Rule 1mith v. 2(b)(3) of the Federal Rules of Civil Procedure) (citing *Jackson v. Payday Fin, LLC*, 764 F.3d

765, 773 (7th Cir. 2014)); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801 (7th Cir. 2011).

## CONCLUSION

The Court should grant the Company's Motion, compel Plaintiff to arbitrate his Claims, and dismiss or alternatively stay the civil action because: (a) The FAA governs the Arbitration Agreement; (b) a written agreement to arbitrate exists and Plaintiff signed it; (c) Plaintiff's claims fall within the scope of the Arbitration Agreement; and (d) the Arbitration Agreement contains a clear waiver-of-rights provision in which Plaintiff agreed to substitute his right to proceed in court or before a jury with private, binding arbitration.

Dated: February 3, 2025

Respectfully submitted,

*/s/ Tejal Garg*
Tejal Garg
Tejal.garg@faegredrinker.com
Faegre Drinker Biddle & Reath LLP
320 S. Canal St., Ste. 3300
Chicago, IL 60606
Telephone : (312) 569-1000
Facsimile : (312) 560-3000

/s/ *Samantha M. Rollins Murphy*
Samantha M. Rollins Murphy (pro hac vice application forthcoming)
samantha.rollinsmurphy@faegredrinker.com
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone : (612) 766-7000
Facsimile : (612) 766-1600

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2025, I electronically filed the foregoing **MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION** herein with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.

____*/s/ _Tejal Garg*________