MR

FILED
9/10/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JM

No. _______________

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| **In re: VENKATESWARA RAO ADDEPALLI,** | ) |
| Petitioner, | ) |
| | ) No. _______________ |
| v. | ) |
| **UNITED STATES DISTRICT COURT FOR THE** | ) On Petition for a Writ of |
| **NORTHERN DISTRICT OF ILLINOIS, EASTERN** | ) Mandamus to the United |
| **DIVISION, THE HONORABLE ANDREA R. WOOD,** | ) States District Court for the |
| Respondent, | ) Northern District of Illinois, |
| | ) Eastern Division, |
| **INFOSYS LTD,** | ) No. 1:24-cv-12933 |
| Real Party in Interest. | |

# PETITION FOR WRIT OF MANDAMUS

**(WITH REQUEST FOR IMMEDIATE STAY OF ARBITRATION PENDING DISPOSITION OF THE PETITION)**

Venkateswara Rao Addepalli
Petitioner, Pro Se
1850 Heather Street
Bolingbrook, Illinois 60490
Telephone: (630) 752-8233
Email: Rao_Add@yahoo.com

Dated: September 3, 2026

## CORPORATE DISCLOSURE STATEMENT

Petitioner Venkateswara Rao Addepalli is an individual proceeding pro se and is not a corporation. Pursuant to Circuit Rule 26.1, Petitioner states that the real party in interest, Respondent Infosys Ltd. ("Infosys"), is, upon information and belief, a publicly traded corporation organized under the laws of India, with no domestic parent corporation known to Petitioner. Petitioner is unaware of any publicly held corporation owning ten percent or more of Infosys's stock.

## STATEMENT REGARDING RELIEF SOUGHT

Petitioner respectfully petitions this Court, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21, for a writ of mandamus directed to the Honorable Andrea R. Wood, United States District Judge for the Northern District of Illinois, Eastern Division, in Addepalli v. Infosys Ltd., No. 1:24-cv-12933. Petitioner asks this Court to:

(1) immediately and administratively stay all arbitration proceedings between Petitioner and Infosys, and stay the district court's September 14, 2026 joint-status-report deadline, pending this Court's disposition of this petition;

(2) vacate the district court's Order of August 15, 2025 (Dkt. 39) compelling arbitration and staying this action, together with its subsequent Orders of March 11, 2026 (Dkt. 50), June 23, 2026 (Dkt. 60), and August 24, 2026 (Dkt. 62), each of which declined to disturb the order compelling arbitration;

(3) direct the district court to find and declare that Petitioner never consented to, accepted, or executed the Mutual Arbitration Agreement Infosys relies upon, and that the Agreement is void

and unenforceable as to Petitioner's claims, or, in the alternative, direct the district court to conduct a summary trial on the formation and enforceability of that Agreement pursuant to 9 U.S.C. § 4; and

(4) direct the district court and its designated Court Reporter to correct, supplement, or certify the record of the October 30, 2025 hearing, or in the alternative to make available the underlying audio recording for Petitioner's use in seeking correction of the record under Federal Rule of Appellate Procedure 10(e), given Petitioner's unresolved, good-faith dispute over the completeness and accuracy of the transcript and the five-month delay between that hearing and the district court's next ruling.

**ISSUES PRESENTED**

1. Whether the district court clearly and indisputably erred, as a matter of law, in compelling arbitration and repeatedly declining reconsideration where Infosys's own records show the offer-and-arbitration document packet as "Unposted," the Mutual Arbitration Agreement bears no signature of Petitioner, and Petitioner's sworn declaration and contemporaneous screenshot evidence affirmatively show that no arbitration term was ever presented to or viewed by him.

2. Whether the district court clearly and indisputably erred in failing to apply Illinois law — including the Illinois Workplace Transparency Act, which voids the Agreement's Texas choice-of-law clause as applied to an Illinois employee — and in failing to hold that the Agreement's delegation clause and the Agreement as a whole are unconscionable and unenforceable under Illinois law.

3. Whether Petitioner has no other adequate means to obtain relief, given that an order compelling arbitration and staying (rather than dismissing) an action is not immediately appealable as of right under 9 U.S.C. § 16(b), and whether a stay of arbitration is necessary to prevent this controversy from becoming moot before it can be reviewed.

4. Whether the incomplete and/or inaccurate transcript of the October 30, 2025 hearing, unresolved despite Petitioner's good-faith efforts to correct it, together with the district court's nearly five-month delay in ruling following that hearing, deprived Petitioner of a full and fair record and warrants this Court's intervention to ensure an accurate record for review.

**STATEMENT OF FACTS**

Petitioner Venkateswara Rao Addepalli, a United States citizen residing in Bolingbrook, Illinois, worked for Infosys as a Lead Consultant from November 2019 through June 2023. On January 2, 2025, proceeding pro se, he filed this action in the Northern District of Illinois alleging national-origin discrimination and retaliatory termination in violation of Title VII and 42 U.S.C. § 1981. (Dkt. 1.)

On February 3, 2025, Infosys moved to compel arbitration and to dismiss or stay the action, relying on a Mutual Arbitration Agreement ("MAA" or "the Agreement") it contended Petitioner had accepted through its online candidate portal on October 30, 2019, together with declarations from its personnel. (Dkt. 12.) Petitioner, opposing pro se and without the benefit of counsel, stated that he had no records in his possession indicating he had accepted the MAA. (Dkt. 15.)

On August 15, 2025, the district court granted Infosys's motion, compelled arbitration, and stayed the action under 9 U.S.C. § 3. (Dkt. 39.) The court found that Infosys had produced evidence

that Petitioner used a portal response form to accept its offer, and that Petitioner had not squarely denied that his offer of employment was contingent on acceptance of the MAA. (Dkt. 39 at 3–4.) The court expressly noted that a sworn, detailed denial of acceptance — "if spelled out in sufficient detail" — would be sufficient to create a triable issue of fact. (Id. at 3 (citing Bradley v. Meijer Stores LP, No. 23 CV 1269, 2023 WL 3042984 (N.D. Ill. Apr. 21, 2023)).)

On August 18, 2025, Petitioner moved to lift the stay and declare the Agreement unenforceable. (Dkt. 40.) That motion attached a contemporaneous screenshot whose visible scroll position confirms that no further content was available beyond what Petitioner actually saw, and explained in detail the same screenshot that had already been filed with the initial Complaint on January 2, 2025. (Dkt. 40, Memorandum of Law in Support of Plaintiff's Motion to Lift Stay and Declare Arbitration Agreement Unenforceable.) An oral hearing on the motion was held on October 30, 2025, before Judge Wood. Nearly five months later, on March 11, 2026, the court denied the motion, construing it as one for reconsideration under Rule 54(b) and finding that most of Petitioner's arguments merely rehashed positions already rejected. (Dkt. 50.)

On March 15, 2026, Petitioner — having by then learned, through his own further research as a pro se litigant, precisely what evidentiary showing the law required — filed a second motion for reconsideration supported by (a) his sworn Declaration expressly and unequivocally denying that he ever signed, saw, or knowingly accepted the MAA, and stating that at no time during his employment was he shown, told about, or asked to sign the Agreement; and (b) a contemporaneous screenshot together with corresponding portal-notification emails showing the actual offer document as it was presented to him on October 30, 2019 — a document that does not reference the word "arbitration," does not reference any attachment, and whose visible scroll position confirms that no further content was available beyond what he actually saw. (Dkt. 51; Dkt. 52.)

Petitioner's Declaration further stated that Infosys's own Exhibit A to the Polanowski Declaration (Dkt. 19-1) shows the document packet's status as "Unposted," and that the MAA itself bears the signature only of Infosys's Richard Lobo — not Petitioner — and contains no signature line for Petitioner at all. (Dkt. 52 ¶¶ 3, 7, 11.)

The screenshot evidence was first presented to the court with the original complaint, filed on January 2, 2025. It was addressed again in detail in Dkt. 40, the Memorandum of Law in Support of Plaintiff's Motion to Lift Stay and Declare Arbitration Agreement Unenforceable, and the same screenshot—together with the corresponding portal-notification emails—was presented once more in Dkt. 51. The only newly discovered evidence was the portal-notification emails; the screenshot itself was not new.

On June 23, 2026, the district court denied that second motion, treating it as based on "newly discovered evidence" and finding that Petitioner had long possessed, but only recently appreciated the significance of, the screenshot evidence, and therefore had not shown the diligence Rule 54(b) and Rule 60(b)(2) require. (Dkt. 60.).

On July 15, 2026, Petitioner filed a further motion, arguing, among other things, that Infosys had never produced any system log, email, or signed document — as opposed to affidavits restating its litigation position — establishing that the MAA was ever presented to him; that Illinois law, not the Agreement's Texas choice-of-law clause, governs the threshold questions of formation and enforceability, particularly in light of the Illinois Workplace Transparency Act, 820 ILCS 96/1-1 et seq., as amended effective January 1, 2026; that the Agreement's delegation clause is itself unconscionable and cannot remove the enforceability question from the court; and that the Agreement is both procedurally and substantively unconscionable because it was presented on a

non-negotiable basis and reserves a judicial forum for Infosys's own claims while compelling arbitration of every claim an employee could bring. (Dkt. 61.) On August 24, 2026, the district court denied that motion as a third motion for reconsideration, without addressing the choice-of-law, delegation-clause, or unconscionability arguments on their merits, and directed the parties to file a joint status report by September 14, 2026 addressing whether arbitration has been initiated. (Dkt. 62.) To date, no arbitration demand has been filed, no arbitrator has been appointed, and no arbitration proceeding of any kind has commenced.

On August 25, 2026, Petitioner filed in the district court a Motion to Stay Arbitration Proceedings Pending the Filing and Disposition of a Petition for Writ of Mandamus, pursuant to Federal Rule of Appellate Procedure 8(a)(1) and the court's inherent authority under Landis v. North American Co., 299 U.S. 248, 254 (1936). (Dkt. 63.) As of the date of this petition, more than a week later, the district court has not ruled on that motion.

Separately, Petitioner has an unresolved dispute concerning the completeness and accuracy of the transcript of the October 30, 2025 hearing (Transcript Order No. 53679). Petitioner corresponded directly with Ms. Brenda S. Varney, the Official Court Reporter assigned to Judge Wood, asking her to describe the process by which the transcript was produced and raising his concern that it was incomplete. Ms. Varney responded only that she had "double checked" and that the transcript was "certified" to be "full and complete," without addressing Petitioner's specific concerns. Petitioner then wrote to the Clerk of the Court, with a copy to the transcription service, requesting the underlying audio recording so that he could verify the transcript against it. The Clerk's office responded that Ms. Varney had "checked and rechecked her steno notes," that no inaccuracy or omission had been identified, and that any backup recording used by a court reporter is the reporter's personal property to which there is no public entitlement, citing Guide to Judiciary

Policy § 510.40.10(c). Petitioner has been unable to obtain either a corrected transcript or access to the underlying recording, and the concern remains unresolved.

## STANDARD FOR MANDAMUS RELIEF

Mandamus is a drastic remedy reserved for extraordinary situations, but it is available where a petitioner establishes: (1) that he has no other adequate means to attain the relief he desires; (2) that his right to the writ is clear and indisputable; and (3) that the issuing court is satisfied, in its discretion, that the writ is appropriate under the circumstances. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380–81 (2004). Mandamus is a traditional and appropriate vehicle for reviewing a district court's determination that a dispute is subject to arbitration, particularly where, as here, that determination is not otherwise subject to interlocutory appeal. See In re Bunge Ltd., 787 F.3d 411, 413 (7th Cir. 2015) (entertaining mandamus petition challenging arbitrability determination); In re VMS Sec. Litig., 103 F.3d 1317, 1322 (7th Cir. 1996) (mandamus available to correct a district court's application of an erroneous legal standard governing arbitration).

## ARGUMENT

### *I. Petitioner Has No Other Adequate Means to Obtain Relief.*

An order compelling arbitration and staying — rather than dismissing — the underlying action is interlocutory and is not immediately appealable as of right under 9 U.S.C. § 16(b). Absent this Court's intervention, arbitration may proceed to a final award before any appellate court has an opportunity to review whether the district court's underlying order was properly entered. Because Petitioner disputes that any agreement to arbitrate was ever formed, an award entered by an arbitrator whom Petitioner contends never had jurisdiction over this dispute cannot be

meaningfully undone after the fact, and the harm of being forced through a private arbitral process without a valid agreement to do so is not one that later appeal — if any were even available — could adequately remedy. See Bunge, 787 F.3d at 413 (mandamus appropriate where party would otherwise be forced through arbitration despite a substantial question whether it agreed to arbitrate). Petitioner has, moreover, exhausted every avenue of relief available to him in the district court, including three successive motions directed at the arbitration order and a motion to stay pending this petition that remains undecided ten days after filing while the September 14, 2026 status-report deadline approaches.

***II. Petitioner's Right to the Writ Is Clear and Indisputable Because No Valid Agreement to Arbitrate Was Ever Formed.***

Under the Federal Arbitration Act, a court must determine that a valid agreement to arbitrate exists before compelling arbitration, and the burden of establishing that agreement rests with the party seeking to compel it. 9 U.S.C. § 4; Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). Federal courts apply state-law contract-formation principles, and an enforceable Illinois contract requires offer, acceptance, consideration, and mutual assent. Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp., 665 F.3d 897, 901 (7th Cir. 2011). Where the party opposing arbitration identifies specific evidence creating a genuine dispute as to formation, the court must proceed to a summary trial on arbitrability rather than resolve the question on the papers. Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002); 9 U.S.C. § 4.

A. Infosys's own records, and Petitioner's uncontroverted contemporaneous evidence, establish a genuine — indeed one-sided — dispute over formation. Infosys's evidence of acceptance consists of a generic offer-acceptance form (Dkt. 12-4) showing only that some

acceptance was recorded, not what Petitioner actually saw or agreed to. Petitioner's sworn Declaration states, in detail, that he never signed the MAA, was never shown it, was never told his offer was contingent on it, and first learned of its existence when Infosys produced it in this litigation years after his employment ended. (Dkt. 52 ¶¶ 3–4, 9–10.) That sworn, detailed denial is, under this Circuit's own case law — cited approvingly by the district court itself — sufficient by itself to create a triable issue. Bradley, 2023 WL 3042984, at *4. Petitioner's Declaration is corroborated, not merely asserted: Infosys's own Exhibit A to the Polanowski Declaration shows the relevant document packet's status as "Unposted" (Dkt. 52 ¶ 7); the contemporaneous screenshot of the offer document Petitioner actually viewed and accepted on October 30, 2019 contains no reference to arbitration or to any attachment, and its scroll-bar position confirms nothing further was available to him; and the MAA Infosys produced bears the signature of its own Head of Human Resources, Richard Lobo, but contains no signature by Petitioner and no signature line for him at all. (Dkt. 51 at 4–5, 13; Dkt. 52 ¶ 11.) On this record, Infosys has offered only affidavits restating its litigation position, while Petitioner has offered primary, contemporaneous documentary evidence to the contrary — precisely the configuration under which Tinder requires a trial rather than summary enforcement. 305 F.3d at 735.

B. The district court's successive orders did not resolve this conflict; they declined to reach it, principally on procedural grounds — that Petitioner's evidence was not "new" because he had possessed the underlying screenshot since filing his original Complaint. (Dkt. 60.) But whether evidence is properly characterized as untimely under Rule 54(b) or Rule 60(b)(2) is a separate question from whether a genuine factual dispute as to arbitration formation exists on the present record; the FAA's mandate that the court "shall proceed summarily to the trial" of a disputed arbitrability question, 9 U.S.C. § 4, does not evaporate because the evidence supporting that

dispute was filed under an earlier docket entry. Nor is the procedural label placed on Petitioner's filings — three "motions for reconsideration" — a substitute for the trial the statute requires once a genuine dispute is shown to exist on the papers actually before the court, wherever they first appeared in the record. To the extent the district court treated Petitioner's unconscionability arguments as an implicit concession that an agreement existed, that reading rests on a misapprehension: a party may argue in the alternative that no agreement was formed and that, even if one were, it is unenforceable, without conceding either position. Fed. R. Civ. P. 8(d)(2).

C. Illinois law — not the Agreement's Texas choice-of-law clause — governs, and independently defeats enforcement. The MAA purports to be "governed by the law of the State of Texas" (Section XIII), yet Petitioner lived and worked in Illinois throughout his employment, and Infosys's own briefing in the district court argued that Illinois law governs the very question of contract formation. Illinois — the state where the employment relationship and Petitioner's discrimination and retaliation claims are centered — has the materially greater interest in whether its resident employees may be bound to a distant, employer-selected legal regime as a non-negotiable condition of applying for a job. Restatement (Second) of Conflict of Laws § 187; Employers Ins. of Wausau v. Ehlco Liab. Ins. Co., 186 Ill. 2d 127, 150 (1999). The Illinois Workplace Transparency Act, 820 ILCS 96/1-1 et seq., as amended by Public Act 104-0320 (eff. Jan. 1, 2026), independently voids a unilaterally imposed condition of employment that applies non-Illinois law or a non-Illinois venue to an Illinois employee's claim of an "unlawful employment practice" — a term reaching discrimination and retaliation claims like Petitioner's. Section XIII was not separately negotiated, no consideration was allocated to it, and the Agreement contains none of the acknowledgments the amended statute requires. This generally applicable rule of Illinois contract law is not preempted by the FAA, because it does not single out arbitration for

disfavored treatment; it voids offending choice-of-law and venue terms in any unilaterally imposed employment contract. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011); 9 U.S.C. § 2 (savings clause).

D. The Agreement's delegation clause cannot remove these questions from judicial review, because the clause is itself invalid. Section III of the MAA purports to delegate all questions of the Agreement's "interpretation, applicability, enforceability or formation" to the arbitrator. Such a clause is enforceable only where the party resisting arbitration "clearly and unmistakably" agreed to delegate arbitrability, Rent-A-Center, 561 U.S. at 69, and where a challenge is specifically directed at the delegation clause itself, the court — not the arbitrator — decides it, id. at 71. Here, the delegation clause was imposed in the identical non-negotiated, take-it-or-leave-it manner as the rest of the Agreement and suffers the same one-sidedness described below; it therefore cannot strip the district court, or this Court, of authority to decide the threshold question of arbitrability. Tellingly, the Agreement itself reserves to "a court of competent jurisdiction" — not the arbitrator — any challenge to its Class Action and Representative Action Waivers (Section IV), confirming that Infosys does not itself treat every enforceability question as belonging to the arbitrator.

E. The Agreement is procedurally and substantively unconscionable under Illinois's sliding-scale test, which weighs the circumstances of formation against the fairness of the terms, with a strong showing on one axis reducing what is required on the other. Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 20–28 (2006); Razor v. Hyundai Motor Am., 222 Ill. 2d 75, 99–100 (2006). Procedurally, the MAA was presented as an attachment to a standardized application packet, acceptance was a non-negotiable condition of proceeding with the job application, and there is no indication Petitioner could have struck or modified a single term; the Agreement's recital that Petitioner was "advised to consult an attorney" is boilerplate that Illinois courts look

past to the actual circumstances of formation. Kinkel, 223 Ill. 2d at 22–23. Substantively, the Agreement lacks a modicum of bipolarity: it excludes from arbitration only "claims for collection of debt or other damages" owed to Infosys — claims only Infosys could bring — while compelling Petitioner to arbitrate the entire universe of claims an employee could bring against an employer, including his discrimination and retaliation claims under Title VII and Section 1981. An arbitration agreement that reserves a judicial forum for the stronger party's claims while compelling arbitration of the weaker party's claims lacks the necessary mutuality and is unconscionable for that reason alone. Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 785–86 (9th Cir. 2002).

### *III. At an Absolute Minimum, the Record Requires a Trial on Arbitrability Rather Than Summary Enforcement.*

Even setting aside Petitioner's affirmative arguments that the Agreement is void and unenforceable, the district court's own summary-judgment standard for motions to compel arbitration required it, at minimum, to submit the formation question to a trial once Petitioner came forward with the sworn, detailed denial and corroborating documentary evidence described above. Tinder, 305 F.3d at 735. The district court has, across four orders spanning more than a year, never squarely weighed Infosys's affidavits against Petitioner's screenshot, portal-status, and signature-page evidence side by side and explained why no reasonable factfinder could credit Petitioner's account; instead, each successive order rested on a procedural rationale — untimeliness, "rehashing," lack of diligence — that assumed away the merits question 9 U.S.C. § 4 requires the court to resolve. That repeated failure to apply the correct legal standard to the arbitrability question is itself grounds for mandamus. In re VMS Sec. Litig., 103 F.3d at 1322.

### *IV. The Incomplete or Inaccurate Hearing Transcript and the District Court's Prolonged Delay in Ruling Warrant This Court's Attention to the Integrity of the Record.*

An accurate record of proceedings is a predicate to meaningful appellate or mandamus review. Petitioner has a good-faith, unresolved dispute over whether the transcript of the October 30, 2025 hearing on his first motion for reconsideration — a hearing at which he made statements the district court later relied upon in its June 23, 2026 order — is complete and accurate. Petitioner raised this concern directly with the assigned Official Court Reporter and, receiving only an unelaborated assurance of certification, escalated the matter to the Clerk of the Court seeking the underlying audio recording so that he could verify the transcript himself. He was informed that no inaccuracy had been identified upon a further check of the reporter's steno notes, and that any backup recording is the reporter's personal property to which the public has no general entitlement under the Guide to Judiciary Policy. Petitioner does not ask this Court to resolve, in the first instance, precisely what the transcript omits or misstates; he asks that the district court be directed to engage meaningfully with a specific, good-faith challenge to the record's completeness — consistent with the settlement-of-record procedure contemplated by Federal Rule of Appellate Procedure 10(e) — rather than treating a generalized certification as foreclosing further inquiry. This concern is compounded by the nearly five-month interval between the October 30, 2025 hearing and the district court's ruling on March 11, 2026, a delay that itself underscores the importance of ensuring the record of what transpired at that hearing is accurately preserved before it recedes further from memory and further orders are built upon it.

### *V. A Stay of Arbitration Pending Disposition of This Petition Is Warranted.*

Petitioner separately moved the district court, on August 25, 2026, for a stay of arbitration pending the filing and disposition of this petition, as Federal Rule of Appellate Procedure 8(a)(1) ordinarily requires. (Dkt. 63.) More than a week has passed without a ruling, and the district court's own August 24, 2026 order sets a September 14, 2026 deadline for the parties to report whether arbitration has been initiated, creating pressure for Infosys to commence arbitration imminently notwithstanding the pendency of this petition. Under these circumstances, moving first in the district court has been attempted, satisfying Rule 8(a)(1), and the absence of any ruling despite the looming deadline makes it impracticable for Petitioner to await further district-court action before seeking relief here. Fed. R. App. P. 8(a)(2)(A).

The traditional stay factors favor a stay. Nken v. Holder, 556 U.S. 418, 434 (2009). First, for the reasons above, Petitioner has made a strong showing of likely success: Infosys's own records mark the operative document packet "Unposted," the Agreement bears no signature of Petitioner, contemporaneous documentary evidence shows no arbitration term was ever presented to him, and independent state-law grounds — the Illinois Workplace Transparency Act, delegation-clause invalidity, and unconscionability — each independently defeat enforcement. Second, Petitioner will suffer irreparable harm absent a stay: if arbitration proceeds to an award while this petition is pending, Petitioner will have been forced to submit disputed federal civil-rights claims to a private arbitrator he contends never had jurisdiction over the dispute, a harm no later appeal or mandamus could adequately undo once an award issues. Third, a brief stay works no material injury on Infosys, which has not even initiated arbitration to date and identifies no proceeding that would be disrupted; the only cost to Infosys is the ordinary delay inherent in awaiting appellate resolution of a threshold jurisdictional question. Fourth, the public interest favors resolving whether any agreement to arbitrate exists before, rather than after, the parties and

an arbitrator expend resources on proceedings that may ultimately be shown to have proceeded without a valid agreement, and favors ensuring that pro se litigants' good-faith, non-frivolous challenges to arbitration agreements receive meaningful review before the underlying dispute is rendered moot.

See the following attachments for supporting documents

- APPENDIX TO PETITION FOR WRIT OF MANDAMUS
- APPENDIX TO PETITION FOR WRIT OF MANDAMUS (Transcripts of Court Hearings)

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Petitioner Venkateswara Rao Addepalli respectfully requests that this Court:

A. ***Immediately and administratively stay all arbitration proceedings between Petitioner and Infosys Ltd., and stay the September 14, 2026 joint-status-report deadline set by the district court's August 24, 2026 order, pending this Court's full disposition of this petition;***

B. Grant the petition for a writ of mandamus and vacate the district court's Order of August 15, 2025 (Dkt. 39) compelling arbitration and staying this action, together with its Orders of March 11, 2026 (Dkt. 50), June 23, 2026 (Dkt. 60), and August 24, 2026 (Dkt. 62);

C. Direct the district court to find and declare that Petitioner never consented to, accepted, or executed the Mutual Arbitration Agreement Infosys has invoked, and that the Agreement is void and unenforceable as to Petitioner's claims; or, in the alternative, direct the district court to conduct forthwith a summary trial on the formation and enforceability of the Agreement pursuant to 9

U.S.C. § 4, applying Illinois law to the questions of choice-of-law, delegation, and unconscionability set out above;

D. Direct the district court to lift the stay of this action and permit Petitioner's Title VII and Section 1981 claims to proceed in this Court;

E. Direct the district court and the assigned Official Court Reporter to meaningfully address Petitioner's good-faith challenge to the completeness and accuracy of the transcript of the October 30, 2025 hearing, including by making available for Petitioner's review the underlying recording or steno notes as necessary to permit correction of the record under Federal Rule of Appellate Procedure 10(e); and

F. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Venkateswara Rao Addepalli
Petitioner, Pro Se
1850 Heather Street
Bolingbrook, Illinois 60490
Telephone: (630) 752-8233
Email: Rao_Add@yahoo.com
Dated: September 3, 2026

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation because, excluding the parts exempted by Federal Rule of Appellate Procedure 21(d) and Rule 32(f), it contains fewer than 6,000 words. This petition was prepared using a proportionally spaced typeface, Times New Roman, 12-point.

Respectfully submitted,

Venkateswara Rao Addepalli
Petitioner, Pro Se
1850 Heather Street
Bolingbrook, Illinois 60490
Telephone: (630) 752-8233
Email: Rao_Add@yahoo.com
Dated: September 3, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I caused a true and correct copy of the foregoing Petition for Writ of Mandamus, together with all supporting materials, to be served on counsel of record for Respondent Infosys Ltd. and on the Honorable Andrea R. Wood, United States District Judge for the Northern District of Illinois, by the methods required by Federal Rule of Appellate Procedure 21(a)(1), including by electronic and/or first-class mail.

Respectfully submitted,

Venkateswara Rao Addepalli
Petitioner, Pro Se
1850 Heather Street
Bolingbrook, Illinois 60490
Telephone: (630) 752-8233
Email: Rao_Add@yahoo.com
Dated: September 3, 2026

VENKATESWARA RAO ADDEPALLI
1850 HEATHER st
BOLINGBROOK IL 60490

Retail
UNITED STATES POSTAL SERVICE®
60604
RDC 03
U.S. POSTAGE PAID
PM
NAPERVILLE, IL 60540
SEP 06, 2026
$18.00
S2324E501013-04

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®
9589 0710 5270 4088 6496 15

CERTIFIED

FIRST CLASS MAIL

Judge Andrea R. Wood
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
Everett McKinley Dirksen United States Courthouse,
219 S. Dearborn Street,
Room 1732,
Chicago, IL 60604.

RECEIVED
SEP 10 2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT