MR

FILED
9/10/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JM

No. ______________

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

**In re: VENKATESWARA RAO ADDEPALLI,**

Petitioner,

**v.**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION,**

Respondent,

**INFOSYS LTD,**

Real Party in Interest.

On Petition for a Writ of Mandamus to the United States District Court for the Northern District of Illinois, Eastern Division, No. 1:24-cv-12933

# APPENDIX TO PETITION FOR WRIT OF MANDAMUS

Venkateswara Rao Addepalli
Petitioner, Pro Se
1850 Heather Street
Bolingbrook, Illinois 60490
Telephone: (630) 752-8233
Email: Rao_Add@yahoo.com

Dated: September 3, 2026

# INDEX TO APPENDIX


| Tab | Document | App. Page |
|---|---|---|
| A | Complaint<br>*Dkt. 1 — Filed January 2, 2025 (excerpt/relevant pages)* | APP. 0001 |
| B | Declaration of Joanne Polanowski<br>*Dkt. 19-1 — Filed February 24, 2025* | APP. 0030 |
| C | Order Granting Defendant's Motion to Compel Arbitration and Staying the Action<br>*Dkt. 39 — Entered August 15, 2025* | APP. 0040 |
| D | Plaintiff's Motion to Lift Stay and Declare Arbitration Agreement Unenforceable<br>*Dkt. 40 — Filed August 18, 2025* | APP. 0045 |
| E | Order Denying Plaintiff's First Motion for Reconsideration<br>*Dkt. 50 — Entered March 11, 2026* | APP. 0071 |
| F | Plaintiff's Second Motion for Reconsideration Based on Newly Discovered Evidence (with Exhibits A–D)<br>*Dkt. 51 — Filed March 15, 2026* | APP. 0073 |
| G | Declaration of Venkateswara Rao Addepalli<br>*Dkt. 52 — Filed March 15, 2026* | APP. 0096 |
| H | Order Denying Plaintiff's Second Motion for Reconsideration<br>*Dkt. 60 — Entered June 23, 2026* | APP. 0101 |
| I | Plaintiff's Motion to Lift the Stay and Allow the Case to Proceed in Court<br>*Dkt. 61 — Filed July 15, 2026* | APP. 0103 |
| J | Order Denying Plaintiff's Third Motion for Reconsideration<br>*Dkt. 62 — Entered August 24, 2026* | APP. 0120 |
| K | Plaintiff's Motion to Stay Arbitration Proceedings Pending the Filing and Disposition of a Petition for Writ of Mandamus<br>*Dkt. 63 — Filed August 25, 2026 (undecided)* | APP. 0122 |
| L | Correspondence Regarding Incomplete/Inaccurate Transcript of the October 30, 2025 Hearing<br>*Transcript Order No. 53679* | APP. 0131 |

# TAB A

## Complaint

Dkt. 1 — Filed January 2, 2025 (excerpt/relevant pages)

BC

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

RECEIVED
12/16/2024 GMM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

FILED JXM
1/2/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Venkateswara Rao Addepalli

Plaintiff(s),

v.

Infosys Ltd

Defendant(s).

Case Number:

1:24-cv-12933
Judge Andrea R. Wood
Magistrate Judge Jeffrey Cole
RANDOM / Cat. 2

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Venkateswara Rao Addepalli of the county of Will in the state of Illinois.

3. The defendant is Infosys Ltd, whose street address is 2300 Cabot Drive, (city) Lisle (county) Dupage (state) Illinois (ZIP) 60532

(Defendant's telephone number) (630) – 577- 1810

4. The plaintiff sought employment or was employed by the defendant at (street address) 1850 Heather Street (city) Bolingbrook (county) Will (state) Illinois (ZIP code) 60490

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) November, (day) 14th, (year) 2019.

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

(a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑ *has* ☐ *has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i) ☑ the United States Equal Employment Opportunity Commission, on or about (month) April (day) 25th (year) 2024.

(ii) ☑ the Illinois Department of Human Rights, on or about (month) April (day) 25th (year) 2024.

(b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days.**

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)______________ (day)______ (year) _________

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month)___________

(day) ________ (year) _________.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes ☐ N0, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b) ☑ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) September (day) 25th (year) 2024 a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [***check only those that apply***]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☑ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [***check only those that apply***]

(a) ☐ failed to hire the plaintiff.

(b) ☑ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☑ failed to stop harassment;

(g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): ______________________________

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Please see attached

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Please see attached

14. [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ Yes ☑ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☑ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☑ Direct the defendant to (specify): ____________________

Please see attached

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(g) ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑ Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

Venkateswara Rao Addepalli
(Plaintiff's name)

1850 Heather Street
(Plaintiff's street address)

(City) Bolingbrook (State) Illinois (ZIP) 60490

(Plaintiff's telephone number) (630) – 752-8233

Date: 12/16/2024

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**Complaint of Employment Discrimination**

**Additional Information for section 12, section 13 and section 16**

I Worked for Infosys Ltd, located at 2300 Cabot Dr, Lisle, IL 60532 from 11/14/2019 to 06/30/2023.

Was assigned to work at American Hotel Registry, Vernon Hills IL. Infosys hired me for this assignment, because they could not find any cheap foreign worker that the client was willing to accept. American Hotel Registry business suffered due to covid and they decided to end my assignment after a few months.

I was getting paid more than many of the foreign workers that Infosys employed in similar positions. Infosys started harassing me to compel me to quit voluntarily. Infosys did not want to lay me off or fire me without cause. Infosys has filed several H1B1 non immigrant work visa applications with USCIS to employ foreign workers. USCIS rules explicitly prohibit Infosys from hiring a foreign worker when a US resident is available for work.

I was eligible for 10 days vacation per year. I was never allowed to take the vacation with the threat of Infosys client ending the assignment. Infosys was able to bill the client an additional 10 days every year, without paying me for the unused vacation time. Infosys actions amount to unjust enrichment. Infosys was harassing me, so I would quit voluntarily and they can hire a cheaper foreign worker to replace me.

Harassing me with denial of vacation days were not enough to force me to quit Infosys voluntarily, they started harassing me in several other ways. In the year 2021 I worked from my home in Illinois only due to the Covid restrictions. I was issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. They failed to correct my W2. I was forced to pay an additional tax and CPA fee respectively amounting to over $10,000. I made several representations to Infosys to compensate me for the additional tax burden I incurred due to no fault of mine. Infosys never compensated me for the additional tax burden I incured.

Infosys continued to harass me, so I would quit voluntarily. In the year 2022 I worked from my home in Illinois only, due to the Covid restrictions. I was again issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. I was made to run from pillar to post before the corrected W2 from Illinois was issued to me.

When all the harassment from Infosys did not make me quit voluntarily, they issued me a layoff notice and was relieved from my job at Infosys. Infosys kept several cheaper foreign workers who were in similar positions.

Infosys must compensate me for all the harassment that was meted to me, must be compensated for the unused vacation time and the additional tax burden I incurred due to the incorrect W2 that was issued to me.

Infosys harassed and discriminated against me due to my country of citizenship being US Citizenship to safe guard its own vested interests to hire and replace USA workers with cheap foreign workers. Infosys Ltd has retained several workers with a H1B visa who had similar skills as me on the day I was laid off.

ILLINOIS DEPARTMENT OF
**Human Rights**

JB Pritzker, Governor
James L. Bennett, Director

May 14, 2024

VENKATESWA R. ADDEPALLI
1850 HEATHER ST
BOLINGBROOK, IL 60490

RE: Charge No.: 2024CE1967
Respondent: INFOSYS LTD
Complaint or Civil Action Filing Dates: **May 12, 2025 through August 11, 2025**

Dear Complainant:

You have filed a discrimination charge under the Human Rights Act. A copy of the charge has been served on the Respondent. Keep this letter for reference if you need to telephone the Illinois Department of Human Rights ('IDHR'). If there is an 'A', 'E', or 'F' in your charge number, we are enclosing an important notice from the Federal Equal Employment Opportunity Commission ('EEOC') because your charge has been automatically filed with that agency.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge. If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition. If we do not have copies of these documents in your file, we have included copies with this notice.

1) Verification of Disability.
Please give the Verification of Disability form to your physician for completion. Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2) Consent form.
The consent form allows IDHR to review your physician's documentation. Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

When a fact-finding conference is scheduled, you will be advised of the date. It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

You have the right to file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court if IDHR has not completed your case by issuing its report of findings within 365 days from the date you filed your PERFECTED signed and notarized charge or within any extension of that time to which you and the Respondent have agreed in writing.

Within 90 days of the expiration of the 365 days or extension (see above paragraph), if you choose, you may file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court. We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside of this 90-day period, the Commission may dismiss your complaint; or, your civil action may be deemed untimely

Once 455 days (or the extended time) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Commission, or commenced a civil action in the appropriate circuit court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case. If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with Section (7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Commission on IDHR, on the same day that you file a complaint with the Commission. The Commission will then schedule a hearing for your case before an Administrative Law Judge. If you commence a civil action in a circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. If you file a complaint with the Human Rights Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

1509-0059 IN-6 NON-MED
Rev. 9/7

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

#24M0502.45

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ IDHR | 2024CE1967 |
| ☒ EEOC | 440-2024-01429 |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Venkateswara Rao Addepalli | | 630-752-8233 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| 1850 Heather Street | Bolingbrook, IL 60490 | MM / DD / YYYY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Infosys Ltd | | 630-577-1810 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 2300 Cabot Drive | Lisle, IL 60532 | DuPage |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| National Origin | 11/14/2019 – 06/30/2023<br>☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

DEPT. OF HUMAN RIGHTS
INTAKE DIVISION
MAY. 12, 2024
RECEIVED
BY:________________

S E E   A T T A C H E D

Page 1 of 2

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true. [735 ILCS 5/1-109]

X [signature] 5/1/24

SIGNATURE OF COMPLAINANT DATE

EEO-5 FORM (Rev. 12/2020-INT)

EEOC RECEIVED 04-25-2024

24M050245

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

2024CF1967

**CHARGE OF DISCRIMINATION**

| For Official Use Only - Charge Number |
|---|
| **440-2024-01429** |

EEOC Form 5A (Sept. 1, 2017)

| | |
|---|---|
| **Personal Information** | First Name: Venkateswara Rao MI: ____ Last Name: Addepalli<br>Address: 1850 Heather Street Apt.: ____<br>City: BolingbrooK County: will State: IL Zip Code: 60490<br>Phone: 6307528233 Home ☐ Work ☐ Cell ☒ Email Address: rao_add@yahoo.com |
| **Who do you believe discriminated against you?** | Employer ☒ Union ☐ Employment Agency ☐ Other Organization ☐<br>Organization Name: Infosys Ltd<br>Address: 2300 Cabot Dr Suite: ____<br>City: Lisle State: IL Zip Code: 60532 Phone: (630) 577-1810 |
| **Why you believe you were discriminated against?** | Age ☐ Color ☐ Disability ☐ Genetic Information ☐ National Origin ☒<br>Race ☐ Religion ☐ Retaliation ☐ Sex ☐ |
| **What happened to you that you believe was discriminatory?** | **Date of most recent job action you believe was discriminatory:** ____<br>**Describe briefly <u>each job action you believe was discriminatory</u> and when it happened (estimate).**<br>Worked for Infosys Ltd located at 2300 Cabot Dr Lisle, IL 60532 from 11/14/2019 to [illegible]/30/2023 Was assigned to work at American Hotel Registry Vernon Hills IL Infosys hired me for this assignment, because they could not find any cheap foreign worker that the client was willing to accept. American Hotel Registry business suffered due to covid and they decided to end my assignment after a few months I was getting paid more than many of the foreign workers that Infosys employed in similar positions. Infosys started harassing me to compel me to quit voluntarily. Infosys did not want to lay me off or fire me without cause. Infosys has filed several H1B1 non immigrant work visa applications with USCIS to employ foreign workers. USCIS rules expressly prohibit Infosys from hiring a foreign worker when a US resident is available for work. I was eligible for 10 days vacation per year. I was never allowed to take the vacation with the threat of Infosys [illegible] the assignment. Infosys was able to bill the client an additional 10 days every year without paying me for the unused vacation time. Infosys actions amount to unjust enrichment. Infosys was harassing me so I would quit voluntarily and they can hire a cheaper foreign worker to replace me. Harassing me with denial of vacation days were not enough to force me to quit Infosys voluntarily. They started harassing me in several other ways. In the year 2021 I worked from my home in Illinois only due to the Covid restrictions. I was issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. They failed to correct my W2. I was forced to pay an additional tax amounting to over $[illegible]. I made several representations to Infosys to compensate me for the additional tax burden I incurred due to no fault of mine. Infosys never compensated me for the additional tax burden I incurred. Infosys continued to harass me so I would quit voluntarily. In the year 2022 I worked from my home in Illinois only, due to the Covid restrictions. I was again issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. I was made to run from pillar to post before the corrected W2 from Illinois was issued to me. When all the harassment from Infosys did not make me quit voluntarily, they issued me a layoff notice and was relieved from my job at Infosys. Infosys kept several cheaper foreign workers who were in similar positions. Infosys must compensate me for all the harassment that was meted to me, must be compensated for the unused vacation time and the additional tax burden I incurred due to the incorrect W2 that was issued to me. Infosys harassed and discriminated against me due to my country of citizenship being US Citizenship to safe guard its own vested interests to hire and replace USA workers with cheap foreign workers. Infosys Ltd has retained several workers with a H1B visa who had similar skills as me on the day I was laid off |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on Age, Color, Disability, Genetic information, National Origin, Religion, Sex, or based on retaliation for: filing a charge of employment discrimination; helping in someone else's complaint about job discrimination; or complaining to the employer about job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>**Signature:** [signature] **Date:** 04/25/2024 |

Complainant: VENKATESWA R. ADDEPALLI        Charge Number: 2024CE1967

Respondent: INFOSYS LTD

## COMPLAINANT QUESTIONNAIRE

In order to assist the IDHR in investigating your charge, please complete and return the following questionnaire to the IDHR **within 30 days** of the date you received this questionnaire.

- If you are represented by an attorney, consult with your attorney prior to completing this questionnaire.
- Provide your answers on a separate sheet of paper. Identify the question number for each response. Use additional sheets as necessary.
- If you are not sure of the answer to any question, you may leave the question blank and the investigator will follow up with you at a later time.

Provide a copy of any documents (such as letters, journals, emails, or other evidence), which relate to the charge allegations.

1. Provide information about Respondent:
   a. State the full legal name(s) (as identified on your W-2 form).
   b. Address of Respondent.
   c. Briefly Describe the type of work carried on by Respondent at this address.

2. On what date did you start working for Respondent?

3. Who hired you? Give name, job title, National Origin:.

4. Please list in chronological order each position you held at the Respondent and the date you started in that position.

5. What were the job duties in the position you held on the date of the incident? Please include a job description if you have one.

6. Who was your immediate supervisor? Give name, job title, National Origin:.

7. Who else worked for your immediate supervisor? Give names, job titles, National Origin; for each person.

8. What do you want to happen as a result of filing your charge?

9. List any witnesses you may have. Witnesses are persons who can support or have first-hand knowledge of the allegations in your charge. Witnesses are **NOT** character references. Witnesses are not contacted during the screening process. Therefore, it is very important you tell us in detail what each witness would tell us, if contacted, during an investigation. Identify each witness by:
   a. Name
   b. Home address
   c. Home telephone number
   d. Relationship to you (co-worker, friend, relative, etc,)
   e. What did the witness see, hear, or experience that would support any of your allegations? Be specific, don't just say "they can tell you what happened."

10. Provide your e-mail address if you have one.

CP (Boilerplate)
09/2023

11. If Respondent notified you that an information technology program or computer-based system ('software") was used in any process related to your charge allegation(s):
    a. On what date Respondent notified you.
    b. Who notified you? Give name, job title, (Basis All).
    c. Identify name of the software used (if known).
    d. Describe how the software was utilized/involved (if known).
    e. Provide a copy of the email or correspondence notifying you of the software use.

ILLINOIS DEPARTMENT OF
Human Rights

JB Pritzker, Governor
James L. Bennett, Director

**IMPORTANT NOTICE TO COMPLAINANT ABOUT MEDIATION**

**The Illinois Department of Human Rights is offering YOU the opportunity to participate in the IDHR Mediation Program before the charge is investigated.**

---

Thousands of cases have experienced the benefits of working out disputes without investigation or litigation. The IDHR MEDIATION PROGRAM lets the parties work out a settlement with the help of a trained, impartial IDHR mediator.

MEDIATION is a form of dispute resolution where parties to an IDHR charge meet in an informal atmosphere and discuss settlement options to close the IDHR charge and avoid a lengthy and possibly expensive investigation.

MEDIATION can provide a fast, free alternative to the IDHR investigation process. The IDHR Mediation Program has a settlement rate of over 80%.

Have you considered the advantages of MEDIATION?

MEDIATION...

...Is **free** - There is no cost to you or the other party. You schedule a mediation conference and attend– that's it!

...Is **convenient** - Parties can attend a mediation conference virtually or in person.

...Is **fast** – Cases can be mediated before the case is assigned for investigation, and conference sessions are generally scheduled for 9 am – 1 pm or 1 pm – 5 pm. Investigations typically last one year

...Is **confidential** – Participation in the IDHR Mediation Program will not affect the outcome of your case. The IDHR investigation is a completely separate process that will not be influenced by the mediation conference.

...Is **not** a hearing on the merits of the charge. The purpose of mediation is to settle the charge by letting the parties discuss their differences and explore options that resolve the dispute.

If you are interested in Mediation, contact the IDHR Mediation Unit at (312) 814-6738 or by email at: IDHR.Mediation@illinois.gov

---

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

UJCK Federal Building
230 S. Dearborn
**Suite 1866 (Enforcement, State and Local & Hearings)**
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Chicago Direct Dial: (312) 872-9777
Enforcement/File Disclosure Fax: (312) 588-1260
Website www.eeoc.gov

IMPORTANT NOTICE. PLEASE READ CAREFULLY. KEEP THIS NOTICE WITH YOUR OTHER RECORDS OF THIS CHARGE. THIS MAY BE THE ONLY NOTIFICATION FROM EEOC.

IDHR CHARGE NUMBER: 2024CE1967 VENKATESWA R. ADDEPALLI

# EEOC NOTICE OF CHARGE FILED

You are filing a charge of employment discrimination with the Illinois Department of Human Rights (IDHR).

As a result of an agreement between the Illinois Department of Human Rights (IDHR) and the U. S. Equal Employment Opportunity Commission (EEOC), the EEOC will also have a record of IDHR's charge of discrimination.

You are encouraged to cooperate with IDHR in the investigation of your charge. The final findings and orders of that agency may be adopted by the EEOC.

IDHR will process your charge. Under section 1601.76 of EEOC's regulations, you are entitled to request that EEOC review IDHR's investigation and findings. To obtain this review, you must request it by writing to this office within 15 days of your receipt of IDHR's final findings of your case. If we do not receive such a request for a review, EEOC will likely accept IDHR's findings without any review or any other processing by EEOC.

EEOC regulations require that you notify us of any change in address and keep us informed of any prolonged absence from your current address. Your cooperation in this matter is essential.

PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPOINTMENT IS REQUIRED, CALL (312) 869-8000 OR 1-800-669-4000.

EEOC NOTICE

ILLINOIS DEPARTMENT OF
Human Rights

JB Pritzker, Governor
James L. Bennett, Director

# CREDIBILITY NOTICE

**The Cooper v. Salazar injunction**

The Illinois Department of Human Rights (IDHR) is under a federal-court injunction that, among other things, orders the IDHR:

> 'To cease permanently from relying on credibility determinations made without affording the rights of confrontation and cross-examination'.

See, Cooper v. Salazar, #98 C 2930, U.S. District Court for the Northern District of Illinois, order dated November 1, 2001, at p. 26, ¶1.

**Meaning of the Cooper Injunction**

The IDHR cannot assess the credibility of Complainant's testimony, the testimony of Complainant's witnesses or the testimony of Respondent's representatives or the witnesses of Respondent where there is conflicting testimony. In other words, if the determination of substantial evidence turns on issues of credibility, the IDHR should make a finding of substantial evidence so that a trier of fact may resolve those issues of credibility. This means that if a determination of lack of substantial evidence requires the IDHR to make a finding of fact as to conflicting evidence, the IDHR will make a finding of substantial evidence so that credibility may be resolved by the Human Rights Commission at a Public Hearing.

The Illinois Human Rights Act defines 'substantial evidence' as:

> 'Evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance'. Illinois Human Rights Act §7A-102(D)(2), codified at 775 ILCS 5/7A-102(D)(2).

**The Meaning of Credibility**

The Illinois Department of Human Rights is an investigatory agency. The IDHR's purpose is to gather all of the evidence from each of the parties as to whether Respondent may or may not have discriminated against the Complainant within the meaning of the Illinois Human Rights Act. The IDHR's purpose is to review all of the evidence and make a determination based upon the law as to whether there is sufficient evidence of discrimination to file a complaint against the Respondent with the Illinois Human Rights Commission. The IDHR will not make a finding that evidence submitted by a party is either believable or not believable. Thus, the IDHR will not base its findings on the fact that one of the parties is not telling the truth or that one party's evidence is not believable. If the resolution of the charge of discrimination requires believing the evidence of one party over another party, the IDHR will make a finding of Substantial Evidence and refer the matter to the Illinois Human Rights Commission so that a trier of fact may resolve the case.

**Conflicting evidence exists when there are:**

1) Statements of a person with material firsthand knowledge contradicted by statements of a different person with material firsthand knowledge.
2) Business records contradicted by oral statements of a person with material firsthand knowledge.
3) Business records of one person contradicted by business records of another person.

By the authority of the State of Illinois (2212013ENGChargeProcessing)

555 West Monroe Street, 7th Floor, Chicago, IL 60661, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
524 S. 2nd Street, Suite 300, Springfield, IL 62701, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

ILLINOIS DEPARTMENT OF
Human Rights

JB Pritzker, Governor
James L. Bennett, Director

## NOTICE OF RIGHT TO OPT OUT

Dear Complainant and Respondent:

Pursuant to Public Act 100-1066, Public Act 100-0221, and Section 7A-102(C-1) of the Illinois Human Rights Act [775 ILCS 5/7A-102(C-1)], the Illinois Department of Human Rights ("IDHR") is required to provide to Complainant and to Respondent notice of Complainant's right to opt out of IDHR's investigation to file a civil action in circuit court.

To opt out of IDHR's investigation, Complainant must submit a request in writing to IDHR within 60 days of receipt of this notice. Upon receipt of Complainant's request to opt out, IDHR will send to the parties a notice of Complainant's right to commence a civil action in circuit court or other appropriate court of competent jurisdiction, and of administrative closure.

IDHR's Opt Out Request Form is available at the following location on IDHR's website:

dhr.illinois.gov/opt-out

Sincerely,

INTAKE UNIT

INTAKE/IN-6 (7A-102(C-1))
Rev. 2/2024

555 West Monroe Street, 7th Floor, Chicago, IL 60661, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
524 S. 2nd Street, Suite 300, Springfield, IL 62701 (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
dhr.illinois.gov

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## CHARGE OF DISCRIMINATION (Form 5A)
## INSTRUCTION SHEET

| This Instruction Sheet explains how to complete your charge of discrimination | |
|---|---|
| **What is the EEOC Charge of Discrimination (Form 5A)?** | The EEOC Charge of Discrimination (Form 5A) is a signed document that includes the basis for your claim of employment discrimination, the circumstances of your claim, the name and address of the employer or organization you believe discriminated against you, and a request that the EEOC take action on your claim of employment discrimination. |
| **Why is the EEOC Charge of Discrimination (Form 5A) attached to the EEOC Pre-Charge Inquiry?** | You must file a charge of job discrimination within 180 days from the day you knew the discrimination occurred, or within 300 days if the employer is located where a State or local government agency enforces employment discrimination laws on the same basis as the laws enforced by the EEOC. The time limits for state laws may differ from federal laws. You can find information about the time limits in your state by following the link to the EEOC office in your area (http://www.eeoc.gov/field/index.cfm) and then viewing the office's information on the timeliness rules for your state or locality and type of claim. If you do not file a charge of discrimination within the time limits, you will lose your rights. For more information about the time limits, go to http://www.eeoc.gov/employees/timeliness.cfm. |
| **What do I need to know about completing the Charge of Discrimination (Form 5A)?** | The EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>Your charge should consist of a clear and brief statement of the facts about the alleged unlawful employment action(s), including the date(s) of each employment action taken against you.<br><br>**FOR EXAMPLE**:<br>• "On July 1, 2017, I was denied an accommodation I needed to perform my job";<br>• "On July 1, 2017, I was fired because I was pregnant";<br>• "On July 1, 2017, I was laid off because of my age."<br><br>If you hand-write your charge, it must be legible. |
| **What happens next?** | When we receive your charge, EEOC staff will evaluate your claims to determine if EEOC will ask for additional information or close the charge. EEOC staff will then attempt to contact you to discuss your claims. We will provide more information about the charge process when we talk to you. If you have not heard from us in 30 days, please call the office on the cover letter. Please keep this Instruction Sheet and the Cover Letter for your records. Please also keep copies of your completed Charge of Discrimination (Form 5A) and your completed EEOC Pre-Charge Inquiry (Form 290A) for your records. |

Issued October 2017

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

For Official Use Only – Charge Number:

EEOC Form 5A (Sept. 1, 2017)

| | |
|---|---|
| **Personal Information** | First Name: Venkateswara Rao MI: ____ Last Name: Addepalli<br>Address: 1850 Heather Street Apt.: ____<br>City: BolingbrooK County: will State: IL Zip Code: 60490<br>Phone: 6307528233 Home ☐ Work ☐ Cell ☒ Email Address: rao_add@yahoo.com |
| **Who do you believe discriminated against you?** | Employer ☒ Union ☐ Employment Agency ☐ Other Organization ☐<br>Organization Name: Infosys Ltd<br>Address: 2300 Cabot Dr Suite: ____<br>City: Lisle State: IL Zip Code: 60532 Phone: (630) 577-1810 |
| **Why you believe you were discriminated against?** | Age ☐ Color ☐ Disability ☐ Genetic Information ☐ National Origin ☑<br>Race ☐ Religion ☐ Retaliation ☐ Sex ☐ |
| **What happened to you that you believe was discriminatory?** | **Date of most recent job action you believe was discriminatory:** ____<br>**Describe briefly <u>each job action you believe was discriminatory</u> and when it happened (estimate).**<br>Worked for Infosys Ltd, located at 2300 Cabot Dr, Lisle, IL 60532 from 11/14/2019 to 06/30/2023.Was assigned to work at American Hotel Registry, Vernon Hills IL. Infosys hired me for this assignment, because they could not find any cheap foreign worker that the client was willing to accept. American Hotel Registry business suffered due to covid and they decided to end my assignment after a few months.I was getting paid more than many of the foreign workers that Infosys employed in similar positions. Infosys started harassing me to compel me to quit voluntarily. Infosys did not want to lay me off or fire me without cause. Infosys has filed several H1B1 non immigrant work visa applications with USCIS to employ foreign workers. USCIS rules explicitly prohibit Infosys from hiring a foreign worker when a US resident is available for work.I was eligible for 10 days vacation per year. I was never allowed to take the vacation with the threat of Infosys client ending the assignment. Infosys was able to bill the client an additional 10 days every year, without paying me for the unused vacation time. Infosys actions amount to unjust enrichment. Infosys was harassing me, so I would quit voluntarily and they can hire a cheaper foreign worker to replace me.Harassing me with denial of vacation days were not enough to force me to quit Infosys voluntarily, they started harassing me in several other ways. In the year 2021 I worked from my home in Illinois only due to the Covid restrictions. I was issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. They failed to correct my W2. I was forced to pay an additional tax amounting to over $6000. I made several representations to Infosys to compensate me for the additional tax b urden I incurred due to no fault of mine. Infosys never compensated me for the additional tax burden I incured.Infosys continued to harass me, so I would quit voluntarily. In the year 2022 I worked from my home in Illinois only, due to the Covid restrictions. I was again issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. I was made to run from pillar to post before the corrected W2 from Illinois was issued to me.When all the harassment from Infosys did not make me quit voluntarily, they issued me a layoff notice and was releived from my job at Infosys. Infosys kept several cheaper foreign workers who were in similar positions.Infosys must compensate me for all the harassment that was meted to me, must be compensated for the unused vacation time and the additional tax burden I incurred due to the incorrect W2 that was issued to me.Infosys harassed and discriminated against me due to my country of citizenship being US Citizenship to safe guard its own vested interests to hire and replace USA workers with cheap foreign workers. Infosys Ltd has retained several workers with a H1B visa who had similar skills as me on the day I was laid off. |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on Age, Color, Disability, Genetic information, National Origin, Religion, Sex, or based on retaliation for: filing a charge of employment discrimination; helping in someone else's complaint about job discrimination; or complaining to the employer about job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>**Signature:** ____ **Date:** 04/25/2024 |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination, Sept. 1, 2017.

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of rights under the Act.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## PRE-CHARGE INQUIRY

For Official Use Only – Inquiry Number:

Thank you for contacting the U.S. Equal Employment Opportunity Commission ("EEOC"). The information you give us on this Pre-Charge Inquiry (Form 290A) will help us assist you and determine if your concerns are covered by the employment discrimination laws we enforce. Answer all questions completely and briefly. Please write clearly.

After completing this Pre-Charge Inquiry, **return it immediately** to the EEOC office identified in the cover letter to this Pre-Charge Inquiry, or to the receptionist if you are completing this Pre-Charge Inquiry in an EEOC office.

**Please note: This Pre-Charge Inquiry is not a Charge of Discrimination.**

The Pre-Charge Inquiry is **not intended** for use by applicants for federal jobs or employees of the US government. See http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm for discrimination complaints in federal jobs.

**Personal Information**

First Name: Venkateswara Rao MI: ___ Last Name: Addepalli

Address: 1850 Heather Street Apt.: ___

City: BolingbrooK County: will State: IL Zip Code: 60490

Email: rao_add@yahoo.com Home Phone: (___)_______ Cell: (630)752-8233

What is the best way to reach you? Email

What are the best days and times to reach you? All days

Date of Birth: 04 / 25 / 1969 Sex: ☑ Male ☐ Female ☐ X (unspecified or another gender identity)

Do you need language assistance? ☐ Yes ☑ No

If so, what do you need? ___

General information about you that will help us to serve all individuals better:

i. Are you Hispanic or Latino? ☐ Yes ☑ No

ii. What is your race? Choose all that apply: ☐ American Indian or Alaskan Native ☑ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White

iii. What is your National Origin or ancestry? Indian

**Who can we contact if we are unable to reach you?**

Name: ___ Relationship: ___

Address: ___ City: ___ State: ___ Zip Code: ___

Email: ___ Home Phone: (___)___ Cell: (___)___

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **Who do you think discriminated against you?** | ☑ Employer ☐ Union ☐ Employment Agency ☐ Other<br>Name of organization where you work(ed) or applied to: Infosys Ltd<br>Address: 2300 Cabot Dr Suite: ____<br>City: Lisle County: Will State: IL Zip Code: 60532<br>Organization Headquarters, if different from above:<br>Name: ____<br>Address: ____ Suite: ____<br>City: ____ County: ____ State: ____ Zip Code: ____<br>Name of Human Resources Director or Owner: ____<br>Email: ____ Phone: (____)____<br>How many employees (estimated) does the organization have at all locations? Check one:<br>☐ Less than 15 ☐ 15-100 ☐ 101-200 ☐ 201-500 ☑ More than 500 |
| **Why do you think you were discriminated against?** | You believe you were discriminated against because of:<br>☐ Race – Your race: ____<br>☐ Color – Your color: ____<br>☐ Religion – Your religion: ____<br>☐ Sex (including pregnancy, gender identity, or sexual orientation)<br>☑ National origin – Your national origin: Country of Citizenship being USA<br>☐ Age (40 or older) – Your age at the time of the job action: ____<br>☐ Disability – Check all that apply:<br>  ☐ You have a disability<br>  ☐ You had a disability in the past<br>  ☐ You don't have a disability but you are treated as if you have a disability<br>  ☐ You are closely related to or associated with a person with a disability<br>What is the disability? ____<br>Is your employer aware of the disability? ☐ Yes ☐ No If yes, how?<br>____<br>☐ Genetic information (including your genetic information, your family medical history, or your participation in genetic services like counseling, education, or testing)<br>☐ Retaliation – Check all that apply:<br>  ☐ You filed a charge of job discrimination<br>  ☐ You contacted a government agency to complain about job discrimination<br>  ☐ You complained to your employer about job discrimination<br>  ☐ You helped or were a witness in someone else's complaint about job discrimination<br>  ☐ You requested an accommodation for your disability or religion<br>☐ None of the above – The reason for this inquiry: ____ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **What happened to you that you think was discriminatory and when did it happen?** | EXAMPLES: I was denied an accommodation I needed to perform my job; I was fired because I was pregnant; I was laid off because of my age.<br>Date: ___/___/______ Action: ____________________<br>____________________<br>Date: ___/___/______ Action: ____________________<br>____________________<br>Name and Title of Person(s) Responsible: ____________________ |
| **What reason(s) were you given for this job action?** | Reason(s) ____________________<br>Who told you this? ____________________ Job Title: __________ |

**Was another person in the same or similar situation treated the same, better, or worse than you?**
**EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?**

| | |
|---|---|
| **Who was treated BETTER than you?** | 1. Name: ____________________ Job Title: __________<br>Email/Phone: ____________________ Check how they are different from you:<br>☐ Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability<br>How were they treated better? ____________________<br>____________________ Date: ___/___/______<br>2. Name: ____________________ Job Title: __________<br>Email/Phone: ____________________ Check how they are different from you:<br>☐ Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability<br>How were they treated better? ____________________<br>____________________ Date: ___/___/______ |
| **Who was treated WORSE than you?** | Name: ____________________ Job Title: __________<br>Email/Phone: ____________________ Check how they are different from you:<br>☐ Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability<br>How were they treated worse? ____________________<br>____________________ Date: ___/___/______ |
| **Who was treated the SAME as you?** | Name: ____________________ Job Title: __________<br>Email/Phone: ____________________ Check how they are different from you:<br>☐ Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability<br>How were they treated the same? ____________________<br>____________________ Date: ___/___/______ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **Are there any witnesses to any of the job actions taken against you? If yes, please provide their contact information and tell us what they will say.** | 1. Name: ______________ Job Title: ______________<br>Email: ______________ Phone: (____)______________<br>What will they tell us? ______________<br>______________<br><br>2. Name: ______________ Job Title: ______________<br>Email: ______________ Phone: (____)______________<br>What will they tell us? ______________<br>______________ |
| **Have you already filed a charge on this matter with the EEOC?** | ☐ Yes ☐ No<br>If yes: Date you filed: ___/___/________ Charge Number: ______________ |
| **Have you filed a complaint on this matter with another agency?** | ☐ Yes ☐ No<br>If yes: Agency name: ______________<br>Date you filed: ___/___/________ Complaint Number: ______________ |
| **Do you have someone representing you in this matter?** | ☐ Yes ☐ No<br>If yes: ☐ Attorney ☐ Union ☐ Other<br>Name: ______________ Date of Contact: ___/___/______<br>Email: ______________ Phone: (____)______________ |
| **Privacy Act Statement** | This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are: 1) EEOC PRE-CHARGE INQUIRY, FORM 290A, ISSUED APRIL 2018. 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. §12117(a). 3) PRINCIPAL PURPOSE. The purpose of this form is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's assessment of your situation. It is not mandatory that this form be used to provide the requested information. EEOC Pre-Charge Inquiry, Form 290A, issued April 2018. |

Please note: You must file a charge of job discrimination within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located where a state or local government agency enforces job discrimination laws on the same bases as the EEOC's laws. **This Pre-Charge Inquiry is not a charge.** If you would like to file a charge of discrimination immediately, contact the EEOC office on the cover letter. We recommend that you keep a copy of your completed Pre-Charge Inquiry and the Cover Letter for your records.

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

**Complaint of Employment Discrimination**

**Additional Information for section 12, section 13 and section 16**

I Worked for Infosys Ltd, located at 2300 Cabot Dr, Lisle, IL 60532 from 11/14/2019 to 06/30/2023.

Was assigned to work at American Hotel Registry, Vernon Hills IL. Infosys hired me for this assignment, because they could not find any cheap foreign worker that the client was willing to accept. American Hotel Registry business suffered due to covid and they decided to end my assignment after a few months.

I was getting paid more than many of the foreign workers that Infosys employed in similar positions. Infosys started harassing me to compel me to quit voluntarily. Infosys did not want to lay me off or fire me without cause. Infosys has filed several H1B1 non immigrant work visa applications with USCIS to employ foreign workers. USCIS rules explicitly prohibit Infosys from hiring a foreign worker when a US resident is available for work.

I was eligible for 10 days vacation per year. I was never allowed to take the vacation with the threat of Infosys client ending the assignment. Infosys was able to bill the client an additional 10 days every year, without paying me for the unused vacation time. Infosys actions amount to unjust enrichment. Infosys was harassing me, so I would quit voluntarily and they can hire a cheaper foreign worker to replace me.

Harassing me with denial of vacation days were not enough to force me to quit Infosys voluntarily, they started harassing me in several other ways. In the year 2021 I worked from my home in Illinois only due to the Covid restrictions. I was issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. They failed to correct my W2. I was forced to pay an additional tax and CPA fee respectively amounting to over $10,000. I made several representations to Infosys to compensate me for the additional tax burden I incurred due to no fault of mine. Infosys never compensated me for the additional tax burden I incured.

Infosys continued to harass me, so I would quit voluntarily. In the year 2022 I worked from my home in Illinois only, due to the Covid restrictions. I was again issued a W2 from Massachusetts state. I communicated with several Infosys personnel to get my W2 corrected. I was made to run from pillar to post before the corrected W2 from Illinois was issued to me.

When all the harassment from Infosys did not make me quit voluntarily, they issued me a layoff notice and was relieved from my job at Infosys. Infosys kept several cheaper foreign workers who were in similar positions.

Infosys must compensate me for all the harassment that was meted to me, must be compensated for the unused vacation time and the additional tax burden I incurred due to the incorrect W2 that was issued to me.

Infosys harassed and discriminated against me due to my country of citizenship being US Citizenship to safe guard its own vested interests to hire and replace USA workers with cheap foreign workers. Infosys Ltd has retained several workers with a H1B visa who had similar skills as me on the day I was laid off.

Rao Addepalli
1850 Heather Street
Bolingbrook, Illinois 60490
(630) 752-8233

Dear Rao,

We at Infosys believe our employees are our most valued asset and key to us achieving our goals It is our continuing ambition to find and retain people who believe in our values and share our desire to build a great Company. Based on our recent discussions with you and our review of your profile, it is with great pleasure that we offer you the below position with Infosys Limited in Vernon Hills, IL

Role: Lead Consultant - US

Role Designation 2016BLCNUS : Lead Consultant

Your Personal Level will be 6.

With your acceptance of this offer, your employment start date is November 18, 2019. We request you to report in person for onboarding at TBD

Your current role has been classified as exempt in accordance with Federal Fair Labor Standards Act (FLSA) and applicable federal and state wage and hour laws. The Exempt or Non Exempt Status of your Role is determined by state and federal regulations and is subject to change from time to time Any changes in the exemption status will be communicated to you.

Your role has associated billable and productivity expectations. It is expected that you will make efforts to find suitable client- billable assignments based on your skills and to maximize your utilization

Due to the nature of this role, your actual work location may vary over time While we do our best to match your qualifications and preferences to our client engagements, your continued employment with Infosys is contingent upon willingness to travel and/or relocate

Your fixed compensation will be USD 105689 per annum; skill allowance USD 69311 per annum and both will be paid in

## Offer Acceptance form - Addepalli, Rao

**Do you accept the offer?** I have read, understand and accept all the terms and conditions contained in this offer letter and attached annexures.

OK

# TAB B

## Declaration of Joanne Polanowski

Dkt. 19-1 — Filed February 24, 2025

# EXHIBIT A
# Declaration of Joanne Polanowski

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:24-cv-12933** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INFOSYS LIMITED,** | ) | **Judge Andrea R. Wood** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DECLARATION OF JOANNE POLANOWSKI IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION**

I, Joanne Polanowski, declare as follows:

1. I make this declaration in support of Defendant Infosys Limited's ("Infosys" or "Company") Reply to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and Dismiss or Stay the Action. I am over the age of 18 and the information set forth herein is based upon my personal knowledge. If called and sworn as a witness, I could and would competently testify thereto.

2. I am employed by Infosys as Senior Practice Lead - Talent Acquisition and I am based in Bridgewater, New Jersey. I have held this position since January 3, 2012. As a result of performing my duties as Senior Practice Lead, I have personal knowledge of certain policies and practices in place regarding the onboarding of candidates for employment with Infosys. I also have access to and am familiar with the company's Candidate Portal, which Infosys utilizes to send and maintain records regarding candidate offer letters, attachments to offer letters, and records of a candidate's acceptance of an offer and its attachments.

3. Candidates who are extended an offer of employment by Infosys must create an account in the company's Candidate Portal using a unique username and password.

4. Infosys initiated two activities related to Plaintiff Venkateswara Rao Addepalli ("Plaintiff") on the Candidate Portal on October 30, 2019: first, Infosys posted a document packet containing Plaintiff's Offer Letter and its attachments to the Candidate Portal; and second, it sent an email to Plaintiff's personal email address notifying him that his offer had been posted to the portal.

5. A true and correct copy of the Candidate Portal reflecting these activities is attached hereto as **Exhibit A.** As reflected in Exhibit A, one of the documents included in the offer letter packet was the Arbitration Agreement.

6. A true and correct copy of the email sent to Plaintiff's personal email address notifying him that the offer packet, including the arbitration agreement, had been posted, is attached hereto as **Exhibit B.** As reflected in the Candidate Portal, the email address to which this email was sent is Rao_Add@yahoo.com.

7. The only way for Infosys's Candidate Portal system to record Plaintiff's digital acceptance of the offer letter and its attachments was if Plaintiff logged into the Candidate Portal using his personal login credentials and clicked the radio button next to the statement "I have read, understood, and accepted all the terms and conditions contained in this offer letter and the attached annexures." Infosys' Candidate Portal reflects that Plaintiff digitally accepted Infosys's offer letter and its attachments (including the arbitration agreement) on October 30, 2019, at 5:51pm.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed 2/24/2025.

JOANNE POLANOWSKI



# EXHIBIT A
## TO DECLARATION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | (Americas) | | |
| Communication - Email | 30-Oct-2019 12:28:35 | B, Poojitha M | | Americas - Offer Notification | B, Poojitha M | Addepalli, Rao(Rao_Add@yahoo.com) | 496288R:Lead Consultant SD Vistex |
| Communication - Document packet posted | 30-Oct-2019 12:27:52 | B, Poojitha M | Status: Unposted | Offer for Rao Addepalli - 30-Oct-2019, 12:27:52 | B, Poojitha M | Addepalli, Rao(Rao_Add@yahoo.com) | 496288R:Lead Consultant SD Vistex |
| | | | Offer Letter for Rao Addepalli.pdf | | | | |

Infosys - Offer for Rao Addepalli - 30-Oct-2019, 12:27:52 - Work - Microsoft Edge

https://trm.brassring.com/CMUI/ViewDocumentPacketSent.aspx?resumekey=1364267&folderid=1364267&clientid=25633&userid=31513&type=documentpacket&key=24358062&respo...

# Document Packet information

Date posted: 10/30/2019
Removal date: 11/29/2019

To review the official offer, please see the attached documents and files.
The offer letter document will require your response - there will be a form at the bottom of the document with a Submit button.

Please review all documents and submit your response to all appropriate documents.

If you have any questions please contact Infosys Recruitment team or directly the recruiter you have been working with.

Regards,
Infosys Recruitment Team

Attached files:
At will agreement.pdf
Confidential Information Agreement.pdf
Non-Compete Agreement.pdf
Benefits Annexure FY 19-2020.pdf
Mutual Arbitration Agreement.pdf
Offer Letter for Rao Addepalli.pdf

Close

# EXHIBIT B

# TO DECLARATION

Addepalli Rao - Work - Microsoft Edge

View sent email communication - Work - Microsoft Edge

https://trm.brassring.com/Jetstream/500/Presentation/Template/Asp/Candidate/ToDo/ViewCorrespondence.asp?resumekey=1364267&folderid=1364267&type=Communication%2...

Help

October 30, 2019

Hello Rao Addepalli,

Congratulations on your recent offer with Infosys. Your offer letter has been posted to your Candidate Portal. Please use the below link to access it: Candidate Zone - Application Documents & Forms

You will be required to login using your existing credentials (the same credentials you used to create your profile when applying for the position).

Please confirm whether you are accepting the offer using dedicated response form at the bottom of your offer letter

Infosys is an organization that has built an outstanding reputation for exciting, innovative and quality products and services. Credit for this goes to every one of our employees. We look forward to you accepting our offer and becoming part of the Infosys team

This email is an automated notification and replies to this address are not monitored. If you have any questions, please email reetesh.263232@infosys.com.

Regards,
Infosys Talent Acquisition

Infosys
Navigate your next

Infosys is an Equal opportunity Employer
EOE/Minority/Female/Veteran/Disabled/Sexual Orientation/Gender Identity/National Origin

Close

# TAB C

## Order Granting Defendant's Motion to Compel Arbitration and Staying the Action

Dkt. 39 — Entered August 15, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VENKATESWARA RAO ADDEPALLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-12933 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| INFOSYS LTD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant's motion to compel arbitration and dismiss or stay the action [12] is granted and Plaintiff's motion for discovery, included within his response to the motion to compel arbitration [15], is denied as moot. Pursuant to 9 U.S.C. § 3, this case is hereby stayed pending the completion of arbitration proceedings. By 11/14/2025, the parties shall file a joint status report setting forth: (1) the status of the arbitration proceedings, and (2) whether any party believes there is any reason the stay of proceedings should be lifted. During the pendency of the arbitration proceedings, the parties will file updated joint status reports every 90 days. Notwithstanding the parties' obligation to file a joint status report, the parties shall promptly notify the Court upon conclusion of the arbitration proceedings. Telephonic status hearing set for 8/15/2025 is stricken; parties need not appear. See the accompanying Statement for details.

**STATEMENT**

Plaintiff Venkateswara Rao Addepalli is a former employee of Defendant Infosys Limited ("Infosys"). Addepalli alleges that, during his employment with Infosys, he was discriminated against on the basis of his national origin and then terminated in retaliation for complaining about that discrimination. He has brought the present action *pro se*, asserting claims against Infosys under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Infosys contends that those claims are subject to an arbitration agreement that Addepalli executed when he was hired by Infosys. Thus, Infosys now moves to compel arbitration and dismiss or stay the action. (Dkt. No. 12.) For the reasons that follow, Infosys's motion is granted.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The Act "embodies both a 'liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

Under the Federal Arbitration Act, arbitration must be compelled when the following three elements are established: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). This Court reviews a motion to compel arbitration under the summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Thus, the Court must accept the non-movant's evidence as true and draw all reasonable inferences in his favor. *Id.* If the party opposing arbitration demonstrates that there is a genuine issue of material fact concerning the existence of an agreement to arbitrate, the issue shall proceed to trial. *Id.* However, "[a] trial to determine arbitrability is required . . . only if the issue an evidentiary hearing would resolve is fairly contestable." *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 671 (7th Cir. 2003).

According to Infosys, it extended an offer of employment to Addepalli on October 30, 2019. (Def.'s Mot. to Compel Arbitration, Ex. A, Claiborne Decl. ¶ 4, Dkt. No. 12-1; Def.'s Mot. to Compel Arbitration, Ex. B, Offer Letter, Dkt. No. 12-2.) In its offer letter to Addepalli, Infosys states that its offer of employment is "contingent upon," among other things, his signing of a mutual arbitration agreement. (Def.'s Mot. to Compel Arbitration, Ex. B, Offer Letter.) That arbitration agreement provides, in relevant part, that "Infosys and Signer agree to resolve covered claims and disputes as provided for in this Agreement before a neutral arbitrator." (Def.'s Mot. to Compel Arbitration, Ex. C, Mutual Arbitration Agreement, Dkt. No. 12-3.) Among the claims that the arbitration agreement expressly identifies as covered claims are "any claims based upon or related to discrimination, harassment, [and] retaliation," which "specifically covers all claims arising under Title VII of the Civil Rights Act of 1964 [and] 42 U.S.C. § 1981." (*Id.*)

The express language of the arbitration agreement leaves no doubt that this action falls within its scope. Moreover, Addepalli has refused to submit to arbitration. Nonetheless, Addepalli contends that arbitration cannot be compelled because Infosys has not shown that he accepted the arbitration agreement. In determining the existence of an agreement to arbitrate, federal courts apply state-law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019). Because Infosys asserts that Illinois law governs the dispute here and Addepalli does not contend otherwise, that is the substantive law the Court will apply. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) ("In the absence of [a request to apply the law of a state other than the forum], we apply Illinois law to the question whether the parties agreed to submit disputes to arbitration."). An enforceable contract in Illinois requires "an offer, acceptance, consideration, and mutual assent." *Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011).

As noted above, Infosys's offer letter to Addepalli made its offer of employment contingent upon Addepalli signing the referenced arbitration agreement. That letter directed Addepalli to formalize his acceptance within five business days of the date of the offer letter. (Def.'s Mot. to Compel Arbitration, Ex. B, Offer Letter.) Separately, also on October 30, 2019, Infosys sent Addepalli an email notifying him that his offer letter and its attachments had been posted to Infosys's candidate portal. (Def.'s Reply in Supp. of Mot. to Compel Arbitration, Polanowski Decl. ¶¶ 4, 6, Dkt. No. 19-1.) That email included a link to Infosys's candidate portal and directed Addepalli to "confirm whether you are accepting the offer using [the] dedicated response form at the bottom of your offer letter." (Ex. B to Polanowski Decl., Dkt. No. 19-1.) And

Case: 1:24-cv-12933 Document #: 39 Filed: 08/15/25 Page 3 of 4 PageID #:234

Infosys has introduced evidence showing that Addepalli used that response form to indicate his acceptance of Infosys's offer on October 30, 2019. (Def.'s Mot. to Compel Arbitration, Ex. D, Dkt. No. 12-4.) Specifically, Addepalli affirmed that he had read, understood, and "accept[ed] all the terms and conditions contained in this offer letter and attached annexures." (*Id.*)

Taken together, the record demonstrates that Infosys notified Addepalli in writing that its employment offer was contingent on his execution of the arbitration agreement and that Addepalli used Infosys's candidate portal's response form to accept the offer. And Addepalli did subsequently commence working for Infosys and continued to do so until his termination giving rise to this lawsuit. Addepalli offers no evidence of his own to rebut Infosys's evidence showing their agreement to arbitrate. Typically, a defendant who disputes the existence of an arbitration agreement attempts to create a dispute of fact by submitting an affidavit or declaration with their sworn denial of entering into such an agreement. *E.g.*, *Bradley v. Meijer Stores LP*, No. 23 CV 1269, 2023 WL 3042984, at *4 (N.D. Ill. Apr. 21, 2023) ("There is a growing consensus among the courts of appeals that a party's sworn statement that he did not sign an arbitration agreement—if spelled out in sufficient detail—is sufficient to create a genuine issue of fact necessitating a trial.").

Addepalli's opposition brief conspicuously fails to deny outright that he accepted Infosys's employment offer on the terms set forth in the offer letter. Rather, Addepalli simply states that he "does not have any records in [his] possession to indicate that [he has] accepted the Mutual Arbitration Agreement." (Pl.'s Opp'n at 2, Dkt. No. 15.) Such a statement is akin to circumstances "where a plaintiff testifies he or she does not ***remember*** receiving or executing an arbitration agreement," which courts generally find "insufficient to create a genuine dispute of fact." *Muhammad v. Dollar Tree*, No. 18 C 04192, 2020 WL 1530750, at *4 (N.D. Ill. Mar. 31, 2020); *see also Greenhill v. RV World, LLC*, 727 F. Supp. 3d 798, 807 (S.D. Ill. 2024) ("[T]he mere fact that Plaintiff failed to read the Agreement, despite having the opportunity to do so, does not prevent the formation of the Agreement.").

Elsewhere in his brief, Addepalli seems to take issue with the form of Infosys's proof of his acceptance. For example, he faults Infosys for not "produc[ing] a copy of the system-generated confirmation email, which is considered the industry standard for electronic acceptance." (Pl.'s Opp'n at 8.) But Infosys has submitted declarations from its employees with knowledge of its policies and procedures for onboarding candidates and personnel files. Infosys also has submitted evidence that it emailed Addepalli's offer letter to the same email address that he provided to this Court in connection with the present action, that the email contained a link to Infosys's candidate portal where the offer letter and its attachments—including the arbitration agreement—had been posted, and that Addepalli had used that link to submit his acceptance of Infosys's offer. Thus, Infosys has come forward with proof of Addepalli's acceptance, thereby requiring Addepalli to come forward with his own evidence to rebut Infosys's proof; nitpicking about whether Infosys could have provided better proof does not suffice. *Tinder*, 305 F.3d at 735 ("[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.").[1]

[1] In a sur-reply, Addepalli asserts that Infosys waived its right to arbitrate by failing to invoke the arbitration agreement during administrative proceedings on his discrimination charge. But the arbitration

Because Infosys's evidence supports its claim that Addepalli agreed to arbitrate the claims here and Addepalli fails to squarely deny that his employment offer at Infosys was contingent on his acceptance of the arbitration agreement, the Court finds that arbitration must be compelled. As a result, the Court must determine whether to dismiss the action outright or stay it pending arbitration. Infosys argues that dismissal is proper because it has sought to enforce the arbitration agreement by way of a motion under Federal Rule of Civil Procedure 12(b)(3). However, the Seventh Circuit has recently clarified that Rule 12(b)(3) is not a proper vehicle for enforcing arbitration agreements. *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 984 (7th Cir. 2024). For that reason, the Court will not dismiss the action but instead grant Infosys's alternative request to stay the case to allow for arbitration in accordance with the parties' arbitration agreement.

Dated: August 15, 2025

Andrea R. Wood
United States District Judge

agreement makes clear that "[n]othing in this Agreement should be interpreted as restricting or prohibiting the Signer from filing a charge . . . with the U.S. Equal Employment Opportunity Commission . . . or any other federal, state, or local administrative agency" and "any dispute or claim that is covered by this Agreement but not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement." (Def.'s Mot. to Compel Arbitration, Ex. C, Mutual Arbitration Agreement.)

# TAB D

**Plaintiff's Motion to Lift Stay and Declare Arbitration Agreement Unenforceable**

Dkt. 40 — Filed August 18, 2025

BC

FILED
8/18/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

GMC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:24-cv-12933** |
| **v.** | ) | **Judge Andrea R. Wood** |
| **INFOSYS LTD,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION TO LIFT STAY AND DECLARE ARBITRATION AGREEMENT UNENFORCEABLE**

Plaintiff respectfully moves this Court to lift the stay entered on 15th August 2025 pursuant to 9 U.S.C. § 3 and to declare the arbitration agreement invalid and unenforceable. In support of this Motion, Plaintiff relies upon the accompanying Memorandum of Law, all pleadings on file, and such other matters as the Court may consider.

**I. Legal Standard Under the Federal Arbitration Act (FAA)**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., embodies a strong federal policy favoring arbitration. However, arbitration agreements are **valid only "save upon such grounds as exist at law or in equity for the revocation of any contract"**. 9 U.S.C. § 2. The U.S. Supreme Court has repeatedly confirmed that **"[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."** *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Thus, even under the FAA, courts must refuse to enforce arbitration clauses that are procedurally and substantively unconscionable, or that prevent the effective vindication of statutory rights.

---

## II. The Agreement's Delegation Clause is Procedurally Unconscionable

**Clause:** *"The Arbitrator... shall have the exclusive authority to resolve any dispute relating to... enforceability or formation of this Agreement..."*

In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69–70 (2010), the Court held that "delegation" of gateway issues to an arbitrator is valid only if the employee "clearly and unmistakably" agreed. Where, as here, the clause is buried in a lengthy adhesion contract presented as a non-negotiable condition of employment, state-law unconscionability doctrines apply. See *Casarotto*, 517 U.S. at 687.

Here, the agreement's **take-it-or-leave-it nature**, absence of meaningful choice, and imbalance of obligations render the delegation provision procedurally unconscionable.

---

## III. The Non-Severable Class Action Waiver Violates Public Policy

**Clause:** *"Class Action Waiver... shall not be severable..."*

While *Epic Systems Corp. v. Lewis*, 584 U.S. ___ (2018), held that individualized arbitration can be required, the Supreme Court in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), held that state-law representative actions (such as California's PAGA claims)

cannot be fully waived. Because this Agreement expressly makes its waiver "non-severable," the invalidity of any portion invalidates the **entire arbitration requirement.**

This structural defect means the Agreement is void in jurisdictions protecting representative labor claims.

---

**IV. The Agreement Unlawfully Restricts Statutory Agency Remedies**

**Clause:** *"...Signer may not recover any monetary benefits in connection with any... EEOC, NLRB... proceeding."*

In *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002), the Court held that "an agreement between an employer and an employee to arbitrate employment-related disputes does not bar the EEOC from pursuing victim-specific judicial relief." Contract terms that attempt to waive an employee's ability to receive statutory remedies through government enforcement actions are unenforceable as against public policy.

This provision directly conflicts with *Waffle House* and is void.

---

**V. The Agreement Is One-Sided and Lacks Mutuality**

**Clause:** Employer may sue in court for debt collection or certain injunctive relief, while employees must arbitrate virtually all claims.

Although the FAA favors arbitration, it does not permit enforcement of fundamentally **one-sided agreements.** The Court in *Casarotto* confirmed that arbitration agreements remain subject to ordinary contract principles. State courts, notably in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 117 (2000), have struck down arbitration clauses that "compel arbitration of the claims employees are most likely to bring...but exempt from arbitration the claims the employer is most likely to bring."

This imbalance is substantively unconscionable.

---

**VI. Discovery and Remedy Restrictions Prevent Effective Vindication of Rights**

**Clause:** Limits discovery to two depositions, one expert, capped subpoenas, and restricts relief to "individual capacity" only.

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991), the Court upheld arbitration of statutory claims only because "there [was] no limitation of remedies" and "adequate discovery" was available. The "effective vindication" doctrine holds that arbitration agreements cannot "forbid the assertion of certain statutory rights." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013).

The combined discovery caps and remedy restrictions here make it impracticable to prove claims such as Title VII discrimination or FLSA wage violations, rendering the agreement unenforceable under *Gilmer* and *Italian Colors*.

---

## VII. Procedural and Substantive Unconscionability Render the Agreement Void

This Agreement was presented as a **condition of employment**, in dense legal language, with no negotiation, and contains multiple substantively unfair provisions: a non-severable unlawful waiver, one-sided carve-outs, discovery limits, and restrictions on statutory remedies.

Under *Casarotto* and *Armendariz*, arbitration agreements in adhesion contracts that are both procedurally and substantively unconscionable are unenforceable in their entirety.

---

## VIII. Severability Provision Fails to Save the Agreement

The Agreement's severability clause expressly excludes the Class Action Waiver from severance. Because that waiver is partially invalid under *Viking River*, the entire arbitration agreement fails.

---

## IX. Conclusion

The FAA does not require enforcement of an arbitration agreement that is **procedurally and substantively unconscionable,** that unlawfully waives statutory rights, or that prevents the effective vindication of federal claims.

For the foregoing reasons, Defendant's motion to compel arbitration should be **denied in its entirety.**

See Exhibit – A for **Contract Provisions vs. Controlling Legal Authority**

WHEREFORE, Plaintiff requests that the Court:

1. Lift the stay entered on August 15th 2025;
2. Declare the arbitration agreement invalid and unenforceable;
3. Reopen this case for litigation on the merits; and
4. Grant such other relief as the Court deems just and proper.

Dated : 18th August 2025

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

**Footnotes:**

1. 9 U.S.C. § 2.
2. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).
3. See *Id.*; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).
4. 561 U.S. 63, 69–70 (2010).
5. *Casarotto*, 517 U.S. at 687.
6. 584 U.S. ___ (2018).
7. 596 U.S. 639, 652–53 (2022).
8. 534 U.S. 279, 294 (2002).
9. *Casarotto*, 517 U.S. at 687.
10. 24 Cal. 4th 83, 117 (2000).
11. 500 U.S. 20, 31 (1991).
12. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:24-cv-12933** |
| | ) | **Judge Andrea R. Wood** |
| **v.** | ) | |
| | ) | |
| **INFOSYS LTD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY**

**AND DECLARE ARBITRATION AGREEMENT UNENFORCEABLE**

**TABLE OF AUTHORITIES**

**Cases**


- *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000)

  ........................................................ 7

- *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)

  ................................................................................ 4, 6

- *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996)

  ........................................................................................ 5, 7

- *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778 (9th Cir. 2002)

  .................................................... 8

- *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .......................................................................... 6
- *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) ............................................................ 7
- *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) ...................................................................... 8
- *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ................................................ 9
- *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ...................................... 5
- *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc) .............................................................. 7
- *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ................................................................................ 4, 6


## I. INTRODUCTION

Plaintiff respectfully submits this memorandum of law in support of the Motion to Lift Stay and to Declare Arbitration Agreement Unenforceable. The Court stayed this action under 9 U.S.C. § 3 pending arbitration. However, because the arbitration agreement is invalid, unconscionable, and lacking in mutuality, the Federal Arbitration Act ("FAA") does not require enforcement. The Court should lift the stay and permit this action to proceed.

Case: 1:24-cv-12933 Document #: 40 Filed: 08/18/25 Page 10 of 25 PageID #:245

## II. LEGAL STANDARD

The FAA requires courts to stay litigation only where a valid arbitration agreement exists and covers the dispute. 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Courts, not arbitrators, must decide challenges to the validity of the arbitration clause itself. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

If an arbitration clause is invalid under generally applicable contract defenses (fraud, duress, unconscionability, or lack of consideration), it is unenforceable. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

## III. ARGUMENT

### A. The Court Has Authority to Lift the Stay and Resolve the Arbitration Clause's Validity

Because Plaintiff challenges the arbitration clause itself, the Court must determine enforceability. *Rent-A-Center*, 561 U.S. at 71. If the clause is invalid, there is no contractual basis for arbitration, and the stay must be lifted.

### B. The Arbitration Agreement Lacks Mutual Assent

Arbitration requires knowing and voluntary consent. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Plaintiff never provided meaningful assent because

[insert facts: hidden clause, lack of disclosure, no signature, unilateral modification, etc.]. Without mutual assent, no valid arbitration agreement exists.

**C. The Arbitration Agreement Is Unconscionable**

Unconscionability is a recognized defense under the FAA. *Doctor's Assocs.*, 517 U.S. at 687.

1. **Procedural Unconscionability** — The arbitration clause was presented on a take-it-or-leave-it basis, without negotiation. Adhesion contracts like this have been found unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1282 (9th Cir. 2006) (en banc).

2. **Substantive Unconscionability** — The agreement imposes unfair burdens such as [excessive fees, limited remedies, restrictive discovery]. These terms deter Plaintiff from vindicating statutory rights. See *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90–92 (2000).

**D. The Arbitration Agreement Lacks Consideration and Mutuality**

A valid contract requires mutuality of obligation. Arbitration agreements that bind only one side are unenforceable. In *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938–39 (4th Cir. 1999), the court struck down an arbitration scheme granting unilateral advantages to the stronger party.

Similarly, in *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 784 (9th Cir. 2002), an agreement was held invalid because only employees' claims were subject to arbitration, while the employer retained the ability to litigate.

Here, Defendant reserves [insert one-sided rights, e.g., ability to go to court for its claims] while binding Plaintiff exclusively to arbitration. This lack of mutuality renders the agreement unenforceable.

**E. Enforcement Would Violate Public Policy**

Even under the FAA, arbitration is unenforceable if it prevents a party from effectively vindicating statutory rights. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). Plaintiff's claims under [insert statute, e.g., civil rights, wage laws, consumer protections] would be thwarted by the unfair arbitration scheme.

## IV. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court:

1. Lift the stay entered on 15th August 2025;
2. Declare the arbitration agreement invalid and unenforceable; and
3. Reopen the case for litigation on the merits.

Dated : 18th August 2025

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

**Exhibit – A**

**CONTRACT PROVISIONS VS. CONTROLLING LEGAL AUTHORITY**

**Contract Provisions vs. Controlling Legal Authority**

| Contract Provision | Contradictory Authority |
|---|---|
| **Delegation Clause:** "The Arbitrator... shall have the exclusive authority to resolve any dispute relating to... enforceability or formation of this Agreement..." | *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69–70 (2010) — Delegation valid only if "clear and unmistakable" and not procedurally unconscionable; adhesion contracts subject to state-law unconscionability principles (*Casarotto*, 517 U.S. at 687). |
| **Non-Severable Class Action Waiver:** "Class Action Waiver... shall not be severable..." | *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 652–53 (2022) — Representative claims (e.g., PAGA) cannot be entirely waived; non-severable unlawful waiver voids agreement. |
| **Restriction on Agency Remedies:** "...Signer may not recover any monetary benefits in connection with any... EEOC, NLRB... proceeding." | *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) — Arbitration agreement cannot bar EEOC from securing victim-specific relief; waivers of statutory remedies are unenforceable. |
| **Employer Carve-Outs:** Employer may seek judicial relief for debt collection, injunctive relief; | *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 117 (2000) — One-sided carve-outs favoring employer create substantive |

| Contract Provision | Contradictory Authority |
| --- | --- |
| employee must arbitrate nearly all claims. | unconscionability; FAA does not protect fundamentally unfair terms. |
| **Discovery Limits:** Two depositions, one expert, capped subpoenas. | *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) — Arbitration of statutory claims valid only with "adequate" discovery; restrictions that impede proof of statutory violations violate the "effective vindication" doctrine (*Italian Colors*, 570 U.S. 228, 236). |
| **Remedy Restrictions:** Relief limited to "individual capacity" only. | *Italian Colors*, 570 U.S. at 236 — Arbitration cannot forbid assertion of certain statutory rights; remedy limitations that undermine federal claims are unenforceable. |

**Exhibit – B**

**INFOSYS ARBITRATION AGREEMENT**

Infosys

## ATTACHMENT 2
## MUTUAL ARBITRATION AGREEMENT

This Mutual Arbitration Agreement ("Agreement") provides Infosys Limited ("Infosys"), its parents, subsidiaries, affiliates, successors and assigns and, you, the individual Signer ("Signer") a fair and efficient process to resolve certain claims and disputes arising out of or related to your employment application submitted to and, if hired, future employment relationship with Infosys.

This Agreement is a contract that creates a binding obligation and covers important issues regarding your relationship to Infosys. It is your sole responsibility to read and understand it.

I. INTRODUCTION. By entering this Agreement, Infosys and Signer agree to resolve covered claims and disputes as provided for in this Agreement before a neutral arbitrator. The Federal Arbitration Act (9 U.S.C. §1 *et seq.*) shall govern this Agreement, which evidences a transaction involving commerce. All disputes covered by this Agreement between Signer and Infosys shall be decided by a neutral arbitrator in an arbitration proceeding and not by a judge or jury in a court proceeding.

II. DISPUTES AND CLAIMS COVERED BY THIS AGREEMENT. Infosys and Signer mutually understand, contract, and agree to the resolution by arbitration of all claims, disputes, or controversies, past, present, or future, including without limitation, claims that arise out of or relate to Signer's recruitment, employment, or separation from employment with Infosys, including claims involving any current or former officer, director, shareholder, agent or employee of Infosys.

The covered disputes that are subject to arbitration under this Agreement are those that, in the absence of this Agreement, could have been brought in court under applicable state, federal or other law. Unless specifically excluded below, this Agreement applies, without limitation, to any claims based upon or related to discrimination, harassment, retaliation, defamation (including claims of post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, emotional distress, breach of fiduciary duty, trade secrets, unfair competition, overtime, wages or other compensation, breaks and rest periods, claims arising out of or relating to the grant, exercise, vesting and/or issuance of equity in Infosys or options to purchase equity in Infosys, termination, tort claims, equitable claims, and all statutory and common law claims. The Agreement specifically covers, without limitation, all claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, the Fair Credit Reporting Act, the Fair Labor Standards Act, the Equal Pay Act, the Genetic Information Non-Discrimination Act, each as amended, any state or local statutes, if any, addressing the same or similar subjects, and any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Disputes and Claims Not Covered by this Agreement."

III. DISPUTES AND CLAIMS NOT COVERED BY THIS AGREEMENT. Signer and Infosys understand and agree that the following claims and disputes are not covered by this Agreement and may therefore be resolved in any other appropriate forum as required by the laws then in effect:

- claims for workers' compensation benefits, unemployment insurance, or state or federal disability insurance;
- claims for benefits under a plan that is governed by the Signer Retirement Income Security Act of 1974 ("ERISA"); however, this Agreement does apply to any claims for breach of fiduciary duty, for penalties, or alleging any other violation of ERISA, even if such claim is combined with a claim for benefits;
- claims for temporary or preliminary injunctive relief (including a temporary restraining order) in aid of arbitration, or to maintain the status quo pending arbitration, in a court of competent jurisdiction in accordance with applicable law;
- claims for collection of debt or other damages from Signer owed to Infosys due to fraudulent expense reimbursement requests or using the Infosys corporate credit card for personal and/or unauthorized purchases. However, if Signer brings a claim against Infosys pursuant to this Agreement, Infosys may, at its discretion, assert as a counterclaim any claims meeting the description of this paragraph;
- any other dispute or claim that has expressly been excluded from arbitration by statute.

The Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, as stated below in Section IV entitled "WAIVERS," the preceding sentence shall not apply to the class, collective, and representative actions described in the Waivers section.

Nothing in this Agreement should be interpreted as restricting or prohibiting the Signer from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the Department of Labor, the Occupational Safety and Health Commission, any other federal, state, or local administrative agency charged with investigating and/or prosecuting complaints under any applicable federal, state or municipal law or regulation (except that the parties acknowledge that the Signer may not recover any monetary benefits in connection with any such claim, charge or proceeding). A federal, state, or local agency would also be entitled to investigate the charge in accordance with applicable law. However, any dispute or claim that is covered by this Agreement but not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement.

IV. WAIVERS. Infosys and Signer hereby waive any right for any dispute to be brought, heard, decided or arbitrated as a class, collective, and/or representative action.

(a) CLASS ACTION WAIVER. To the extent permitted by law, all covered claims under this Agreement must be brought by Infosys or Signer in an individual capacity and not as a plaintiff or class member in any purported CLASS OR COLLECTIVE ACTION proceeding either in court or in arbitration ("Class Action Waiver"). Nor shall the Arbitrator have any authority to hear or arbitrate any such dispute.

Notwithstanding any other clause in this Agreement, the Class Action Waiver shall not be severable from this Agreement in any instance in which the dispute is brought or maintained as a class and/or collective action.

(b) REPRESENTATIVE ACTION WAIVER. Infosys and Signer also hereby waive any right for any dispute to be brought, heard, decided, or arbitrated as a PRIVATE ATTORNEY GENERAL REPRESENTATIVE ACTION ("Representative Action Waiver"). Nor shall the Arbitrator have any authority to hear or arbitrate any such dispute.

The Representative Action Waiver does not apply to any claim that Signer brings in arbitration as a private attorney general solely on his/her own behalf and not on behalf of or regarding others. The Representative Action Waiver shall be severable from this Agreement in any case in which there is a final judicial determination that the Representative Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

Notwithstanding any other clause or language in this Agreement and/or any rules or procedures that might otherwise apply by virtue of this Agreement or by virtue of any arbitration organization rules or procedures that now apply or any amendments and/or modifications to those rules, any claim that the Class Action Waiver or Representative Action Waiver, or any portion of the Class Action Waiver or Representative Action Waiver is unenforceable, inapplicable, unconscionable, or void or voidable, shall be determined only by a court of competent jurisdiction and not by an arbitrator. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

V. TIME TO FILE CLAIMS. We understand and agree that the party initiating the claim must make a written request for arbitration of the claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. The failure to submit a written request for arbitration within this time frame will constitute a waiver of all rights to raise those claims either through arbitration or otherwise that are subject to this Agreement. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the request for arbitration and the apply the statute of limitations that would have applied if the claim(s) had been brought in court.

VI. PROCEDURE FOR SUBMITTING A REQUEST FOR ARBITRATION. A written request for arbitration of claims under this Agreement against Infosys shall be sent to the attention of Infosys Limited at the following address:

Case: 1:24-cv-12933 Document #: 40 Filed: 08/18/25 Page 21 of 25 PageID #:256

**CT Corporation System**
**1999 Bryan Street, Suite 900**
**Dallas, Texas 75201**

In the event that Infosys requests arbitration under this Agreement, Infosys shall send written notice to the last mailing address and personal email address it has on file for Signer.

VII. SELECTION OF NEUTRAL ARBITRATOR. The parties shall select the neutral arbitrator by mutual agreement. Unless the parties jointly agree otherwise, the Arbitrator shall be an attorney experienced in employment law and licensed to practice law in the state in which the arbitration is convened, or a retired judge from any jurisdiction in the United States. The process for selecting an Arbitrator is as follows: Within twenty-one (21) days of receipt of the request for arbitration, the responding party shall tender to the complaining party a list of at least five names of acceptable arbitrators. Within twenty-one (21) days thereafter, the complaining party shall notify the responding party whether any of the proposed arbitrators are acceptable and, if none of the responding party's proposed arbitrators are acceptable, the complaining party shall tender to the responding party a list of at least five acceptable arbitrators. The responding party shall notify the complaining party within ten (10) days whether any of the complaining party's proposed arbitrators is acceptable.

In the event that the parties do not mutually agree to an arbitrator, the Arbitrator shall be selected as follows: The American Arbitration Association ("AAA") shall give each party a list of eleven (11) arbitrators drawn from its panel of arbitrators. Each party shall have ten (10) calendar days from the postmark date on the list to strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names, with the party to strike first to be determined by a coin toss, until only one remains. If no common name remains on the lists of all parties, the AAA shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party striking first to be determined by a coin toss, until only one name remains. That person shall be designated as the Arbitrator. If for any reason, that person cannot serve, the AAA shall issue another list of eleven (11) arbitrators and repeat the alternate strike selection process.

If for any reason the AAA will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted to appoint a neutral Arbitrator.

VIII. PLACE OF ARBITRATION. Unless the parties jointly agree otherwise, the arbitration shall take place in the county in which the Signer applied to work, works, or worked at the time the dispute or claim arose. If, however, such place is outside the United States, the arbitration shall take place in Dallas County, Texas, unless the parties jointly agree otherwise.

IX. ARBITRATION RULES AND PROCEDURES. We understand and agree that the arbitration shall be conducted in accordance with the then current American Arbitration Association Employment Arbitration Rules and Mediation Procedures ("AAA Employment Arbitration Rules"), except as otherwise provided in this Agreement. The AAA Rules are also

available via the internet at www.adr.org/employment or by using a service such as www.google.com to search for "AAA Employment Arbitration Rules".

Each party shall have the right to take the deposition of up to two individual witnesses and any expert witness designated by another party with each party having the right to designate only one expert. Each party also shall have the right to propound 15 requests for production of documents and 10 interrogatories to any party. Additional discovery may be had by mutual agreement of the parties or where the Arbitrator selected so orders pursuant to a showing of good cause by either party. Each party shall have the right to subpoena witnesses and documents for the arbitration, including documents relevant to the case from third parties, for the arbitration hearing. The Arbitrator shall apply the Federal Rules of Civil Procedure to resolve discovery disputes.

The Arbitrator shall have no authority to issue any third-party subpoenas seeking production of information or testimony before the arbitration hearing unless the Federal Court of Appeals for the federal district that would otherwise have jurisdiction over the dispute has expressly stated that the Federal Arbitration Act authorizes the Arbitrator to issue such subpoenas.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems necessary. Each party shall have the right to bring dispositive motions, including motions to dismiss and/or motions for summary judgment. The Arbitrator shall apply the standards for those motions under the Federal Rules of Civil Procedure.

The Federal Rules of Evidence shall apply to the arbitration proceedings. Either party may obtain a court reporter to provide a stenographic record of the proceedings. Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The Arbitrator will set the time for filing such a brief.

To the extent that any of the AAA Employment Arbitration Rules or anything in this Agreement conflicts with the arbitration procedures required by law, the arbitration procedures required by law shall govern. Signer and Infosys also agree that nothing in this Agreement relieves either of them from any obligation they may have to exhaust certain administrative remedies before arbitrating any claims or disputes under this Agreement.

X. AWARD AND DECISION. The Arbitrator will issue a decision and award in writing, including the factual and legal basis for the decision. The Arbitrator may award to the Signer or to Infosys any remedy to which that party is entitled under applicable law (including, but not limited to, legal, equitable, and injunctive relief), but such remedies are limited to those that would be available to a party in his or her individual capacity in a court of law for the disputes presented to and decided by the Arbitrator. The Arbitrator is without jurisdiction to apply any different substantive law. The award may be entered in any court of competent jurisdiction.

XI. FINAL AND BINDING ARBITRATION. We understand that the arbitration of disputes and claims under this Agreement shall be instead of a trial before a judge and/or jury in a court proceeding. We also understand and agree that the Arbitrator's decision will be final and binding

on both Infosys and the Signer, subject to review on the grounds set forth by the laws of State where the Signer was or is primarily employed by Infosys.

XII. COSTS OF ARBITRATION. Infosys will pay the Arbitrator's and arbitration fees and costs, except for the filing fee, if any, as required by the organization through which the arbitration is conducted. If the Signer is financially unable to pay a filing fee, he or she will be relieved of the obligation to pay the filing fee. If the law (including the common law) of the jurisdiction in which the arbitration is held requires a different allocation of arbitral fees and costs for this Agreement to be enforceable, then such law shall be followed. Any disputes as to the fees, costs, and the law that applies to fees and costs will be resolved by the Arbitrator.

Each party shall pay for its own costs and attorneys' fees, if any. The Arbitrator will not have any authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees as required or permitted by the applicable law. The Arbitrator will resolve any dispute as to whether Infosys or the Signer is the prevailing party in the arbitration.

XIII. GOVERNING LAW. The parties agree that Infosys is engaged in transactions involving interstate commerce. We understand that this is an Agreement to arbitrate under the Federal Arbitration Act, 9 U.S.C. §1 *et seq*. To the extent not inconsistent with the Federal Arbitration Act, this Agreement and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the law of the State of Texas.

XIII. SEVERABILITY. Except as provided in Section IV "Waivers" above, if any provision of this Agreement is adjudged to be void, voidable or otherwise unenforceable, in whole or in part, such provision shall be severed from this Agreement. All remaining provisions shall remain in full force and effect.

IX. CONSIDERATION. Infosys and the Signer agree that the mutual obligations by each to arbitrate disputes provide adequate consideration for this Agreement.

X. ENTIRE AGREEMENT. We understand and agree that this Agreement is the sole and complete agreement between the parties on the subject of arbitration of disputes, except that if Signer and Infosys have a pre-existing agreement to arbitrate, and this Agreement is declared invalid, then the pre-existing agreement to arbitrate shall remain controlling. Further, we agree that this Agreement shall not supersede any arbitration agreement in connection with any benefit plan. This Agreement shall survive the termination of the Signer's employment with Infosys and the expiration of any benefit. No party is relying on any representations, oral or written, on the subject of the effect, enforceability, or meaning of this Agreement, except as set forth in this Agreement. Notwithstanding any contrary language, if any, in any Infosys policy or handbook, this Agreement may not be modified, revised or terminated absent a writing signed (electronically or otherwise) by both parties.

XI. NOT A CONTRACT OF EMPLOYMENT. This Agreement does not alter the "at-will" status of my employment. This Agreement is not, and shall not, be construed to create, any contract of employment, express or implied.

**Knowing and Voluntary Agreement**

WE UNDERSTAND AND AGREE THAT WE HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY OF OWN CHOOSING BEFORE ACCEPTING THIS AGREEMENT (THROUGH SIGNATURE OR ELECTRONIC ACCEPTANCE), AND WE HAVE HAD AN OPPORTUNITY TO DO SO. BY ACCEPTING THIS AGREEMENT, WE ACKNOWLEDGE WE HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND WE ARE WAIVING ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR JURY OF ANY ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT.

**Infosys Limited**

**Richard Lobo**
**EVP and Head Human Resources -Infosys Limited**

**CERTIFICATE OF SERVICE**

I hereby certify that on 18th August 2025, I electronically filed the foregoing PLAINTIFF'S MOTION TO LIFT STAY AND DECLARE ARBITRATION AGREEMENT UNENFORCEABLE and MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY AND DECLARE ARBITRATION AGREEMENT UNENFORCEABLE herein with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.

Dated : 18th August 2025

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

# TAB E

## Order Denying Plaintiff's First Motion for Reconsideration

Dkt. 50 — Entered March 11, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VENKATESWARA RAO ADDEPALLI,<br><br>Plaintiff,<br><br>v.<br><br>INFOSYS LTD,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 24-cv-12933<br><br>Judge Andrea R. Wood |

**ORDER**

Having reviewed the parties' briefing, the Court construes Plaintiff's motion to lift stay and declare arbitration agreement unenforceable [40] as a motion under Federal Rule of Civil Procedure 54(b) for reconsideration of the Court's order compelling arbitration and staying proceedings [39]. That motion is denied. Under Rule 54(b), a district court may reconsider its interlocutory orders at any time before entry of a final judgment. Fed. R. Civ. P. 54(b); *e.g., Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks omitted). By contrast, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* at 1270. With the instant motion, Plaintiff asks the Court to declare void and unenforceable his arbitration agreement with Defendant. However, the existence of a valid and enforceable arbitration agreement was a central issue for Defendant's motion to compel arbitration and, in granting that motion, the Court concluded that Plaintiff had agreed to arbitrate the claims in this case. Most of Plaintiff's arguments for reconsideration represent nothing more than an attempt to rehash and relitigate arguments already rejected in connection with Defendant's motion to compel arbitration. To the extent Plaintiff raises any new arguments in his motion for reconsideration about the purported procedural and substantive unconscionability of the arbitration agreement, those arguments could have been made in opposing Defendant's motion to compel arbitration and do not provide a basis for the Court to reconsider its order compelling arbitration. Accordingly, the stay in this case shall remain in place pending completion of arbitration proceedings. The telephonic status hearing set for March 12, 2026 is stricken. Instead, by June 11, 2026, the parties shall file a joint status report setting forth: (1) the status of the arbitration proceedings, and (2) whether any party believes there is any reason the stay of proceedings should be lifted. Notwithstanding the parties' obligation to file a joint status report, the parties shall promptly notify the Court upon conclusion of the arbitration proceedings.

Dated: March 11, 2026

Andrea R. Wood
United States District Judge

# TAB F

## Plaintiff's Second Motion for Reconsideration Based on Newly Discovered Evidence (with Exhibits A–D)

Dkt. 51 — Filed March 15, 2026

Case: 1:24-cv-12933 Document #: 51 Filed: 03/15/26 Page 1 of 22 PageID #:294

BC

FILED
3/15/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

CVK

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:24-cv-12933** |
| | ) | **Judge Andrea R. Wood** |
| **v.** | ) | |
| | ) | |
| **INFOSYS LTD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DATED AUGUST 15, 2025 AND/OR ORDER DATED MARCH 11, 2026, BASED ON NEWLY DISCOVERED EVIDENCE AND PLAINTIFF'S SWORN DECLARATION**

## INTRODUCTION

Plaintiff Venkateswara Rao Addepalli, proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 54(b) and, in the alternative, Rule 60(b)(2) and Rule 60(b)(6), to reconsider its Order dated August 15, 2025 (Dkt. No. 39) compelling arbitration and staying this action, and/or its Order dated March 11, 2026 (Dkt. No. 50) denying Plaintiff's prior motion for reconsideration. Plaintiff submits newly discovered evidence that was unavailable or withheld at the time of the prior briefing: (1) a screenshot of the actual "Offer of Employment" as it was presented to and accepted by Plaintiff on October 30, 2019 (Exhibit A), which conclusively demonstrates that no Mutual Arbitration Agreement ("MAA") appeared in the offer document Plaintiff viewed and accepted; (2) The offer was presented to the Plaintiff using a portal link only on October 30, 2019 (Exibit

B and Exibit C), which conclusively demonstrates that no Mutual Arbitration Agreement ("MAA") were ever sent to the Plaintiff in any other way; and (3) the sworn Declaration of Venkateswara Rao Addepalli expressly and unequivocally denying that he accepted or consented to the MAA.

This newly submitted evidence directly cures the specific deficiency identified by the Court in its August 15, 2025 Order: that "Addepalli fails to squarely deny that his employment offer at Infosys was contingent on his acceptance of the arbitration agreement." (Order at 4.) Plaintiff now makes that square denial, under oath, and supports it with contemporaneous documentary evidence that was never presented to the Court. Reconsideration is warranted to prevent a manifest injustice.

## PROCEDURAL BACKGROUND

On December 31, 2024, Plaintiff filed this action alleging discrimination based on national origin and retaliatory termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. (Dkt. No. 1.)

On January 27, 2025, Defendant Infosys Limited filed a Motion to Compel Arbitration (Dkt. No. 12), supported by: (A) the Declaration of Kimberly Claiborne (Dkt. No. 12-1); (B) a purported Offer Letter (Dkt. No. 12-2, "Exhibit B"); (C) the Mutual Arbitration Agreement (Dkt. No. 12-3, "Exhibit C"); and (D) an offer acceptance form (Dkt. No. 12-4, "Exhibit D").

On February 10, 2025, Plaintiff, proceeding pro se and without legal counsel, filed his opposition (Dkt. No. 15). Plaintiff stated that he did not have any records in his possession indicating that he accepted the Mutual Arbitration Agreement.

On August 15, 2025, this Court granted Defendant's Motion to Compel Arbitration and stayed the action. (Dkt. No. 39.) The Court found that Plaintiff's opposition "conspicuously fails to deny outright that he accepted Infosys's employment offer on the terms set forth in the offer letter" and that Plaintiff "fails to squarely deny that his employment offer at Infosys was contingent on his acceptance of the arbitration agreement." (Order at 3–4.)

On August 18, 2025, Plaintiff filed a motion to lift the stay and declare the arbitration agreement unenforceable. (Dkt. No. 40.) On March 11, 2026, the Court denied that motion, finding that most arguments had been previously raised or could have been raised earlier. (Dkt. No. 50.)

Plaintiff now presents newly discovered evidence—including his own sworn declaration and a contemporaneous screenshot of the offer document together with the emails to access the URL as actually presented to him—that was not before the Court in the prior proceedings.

**NEWLY DISCOVERED EVIDENCE**

**A. The Employment Agreement Acceptance Email and Screenshot of the Actual Offer Document**

Plaintiff submits as Exhibit A, Exhibit B & Exhibit C the Employment Agreement Acceptance Email he received from Infosys on or around October 30, 2019, along with a screenshot of the "Offer of Employment" document as it was actually presented to him through Infosys's candidate portal at the time of acceptance.

The screenshot constitutes the primary, contemporaneous evidence of what was actually presented to Plaintiff when he accepted the employment offer. The following facts are established by Exhibit A, Exhibit B & Exhibit C:

- The offer document was accessible only via a URL provided by Defendant through its candidate portal. No download option was made available to Plaintiff.
- Plaintiff saved a screenshot of the offer document for his personal records—the only means available to him to preserve the contents of what was presented. The screenshot was emailed to the defendant.
- The screenshot shows the complete offer document as visible on Plaintiff's screen at the time of acceptance. The vertical scroll bar visible at the right side of the screen confirms that Plaintiff had scrolled to the bottom of the document, and no further content—including any Mutual Arbitration Agreement—was visible or presented beyond what appears in the screenshot.
- The screenshot does not show or reference any arbitration agreement, mutual arbitration agreement, or any notice that acceptance of employment was contingent upon agreement to arbitrate.
- The only version of the Offer of Employment that includes the MAA is the version produced by Defendant after this lawsuit was filed, long after Plaintiff accepted the offer in October 2019.

This evidence directly contradicts Defendant's Exhibit B (the offer letter submitted with its motion to compel) and demonstrates a genuine dispute of material fact as to what was actually presented to and accepted by Plaintiff.

**B. Defendant's Exhibit D Shows Acceptance Only—Not the Contents of What Was Accepted**

Defendant's Exhibit D (Dkt. No. 12-4), the offer acceptance form, was relied upon by the Court to find that Plaintiff "affirmed that he had read, understood, and 'accept[ed] all the terms and conditions contained in this offer letter and attached annexures.'" (Order at 3.) However, Exhibit D shows only that an acceptance was recorded. It does not show, and cannot establish, the contents of what Plaintiff actually viewed and accepted.

The actual contents of what Plaintiff accepted are demonstrated by Exhibit A—the Employment Agreement Acceptance Email and the contemporaneous screenshot of the offer document. Defendant was in possession of this email and the underlying portal records at all times. Defendant was therefore fully aware of the material facts surrounding what was presented to and accepted by Plaintiff. Defendant's deliberate reliance on Exhibit D, while omitting the email and screenshot contained in Exhibit A, Exhibit B & Exhibit C constitutes a selective and misleading presentation of the record.

**C. The Declaration of Venkateswara Rao Addepalli**

Plaintiff files herewith the Declaration of Venkateswara Rao Addepalli in Support of this Motion ("Addepalli Declaration"). The Declaration provides the sworn, direct denial that the Court identified as lacking in its August 15, 2025 Order. In his Declaration, Plaintiff states under oath:

- He did not at any time consent to or agree to the Mutual Arbitration Agreement.

- The offer document as presented to him through the Infosys candidate portal did not include a Mutual Arbitration Agreement.
- He had no knowledge that his employment offer was purportedly contingent upon agreement to arbitrate, because no such condition appeared in the offer document he viewed and accepted.
- He first became aware of the existence of the MAA when Defendant introduced it as an exhibit in this litigation, after the lawsuit was filed.

The Seventh Circuit and courts in this district have consistently held that a sworn denial of an arbitration agreement—spelled out in sufficient detail—is sufficient to create a genuine issue of fact requiring trial. Bradley v. Meijer Stores LP, No. 23 CV 1269, 2023 WL 3042984, at *4 (N.D. Ill. Apr. 21, 2023). This Court specifically cited Bradley in its August 15, 2025 Order as the standard for creating a triable issue. Plaintiff now meets that standard.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 54(b), a district court may reconsider any interlocutory order at any time before entry of a final judgment. Wiegel v. Stork Craft Mfg., Inc., 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012). Reconsideration is appropriate to "correct manifest errors of law or fact or to present newly discovered evidence." Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269 (7th Cir. 1996).

In the alternative, Rule 60(b)(2) provides for relief from a final order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in

time to move for a new trial under Rule 59(b)." Rule 60(b)(6) further provides relief for "any other reason that justifies relief" in extraordinary circumstances. Plaintiff submits that both provisions support reconsideration here.

Under the summary judgment standard applicable to motions to compel arbitration, the Court must "accept the non-movant's evidence as true and draw all reasonable inferences in his favor," and must order a trial if "the party opposing arbitration demonstrates that there is a genuine issue of material fact concerning the existence of an agreement to arbitrate." Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002).

## ARGUMENT

### I. THE NEWLY DISCOVERED EVIDENCE CREATES A GENUINE ISSUE OF MATERIAL FACT REQUIRING TRIAL ON ARBITRABILITY

The Court's August 15, 2025 Order compelled arbitration because Plaintiff failed to submit a sworn denial of the arbitration agreement and offered no evidence to rebut Infosys's evidence of acceptance. (Order at 3–4.) Plaintiff now presents both: a detailed sworn declaration expressly denying that he accepted or consented to the MAA, and contemporaneous documentary evidence—the screenshot of the actual offer document as presented to him—showing that the MAA was not included in the offer he viewed and accepted.

Together, these submissions create a genuine issue of material fact as to whether a valid agreement to arbitrate was ever formed. This is precisely the circumstance that requires a trial on arbitrability. Tinder, 305 F.3d at 735; see also Bradley, 2023 WL 3042984, at *4

("There is a growing consensus among the courts of appeals that a party's sworn statement that he did not sign an arbitration agreement—if spelled out in sufficient detail—is sufficient to create a genuine issue of fact necessitating a trial.").

**II. PLAINTIFF'S FAILURE TO SUBMIT A SWORN DENIAL AT THE PRIOR STAGE WAS THE DIRECT RESULT OF HIS PRO SE STATUS AND THE INFORMATION ASYMMETRY CREATED BY DEFENDANT'S LITIGATION STRATEGY**

The Court's August 15, 2025 Order acknowledged that a party typically creates a triable issue by "submitting an affidavit or declaration with their sworn denial of entering into such an agreement." (Order at 3, citing Bradley.) That Plaintiff did not do so was not for lack of merit, but for lack of legal knowledge.

Plaintiff is a pro se litigant without legal training or counsel. Confronted with corporate declarations, portal screenshots, and formal legal briefing from Defendant's attorneys, Plaintiff did not know that the law required him to submit his own sworn affidavit to create a triable issue of fact. Defendant's counsel—aware of the evidentiary standard from Bradley and the case law it cites—chose not to alert Plaintiff or the Court to the fact that a proper sworn denial would have defeated its motion. This information asymmetry operated directly to Defendant's advantage and to Plaintiff's prejudice.

Courts have recognized that pro se litigants are entitled to some leeway in procedural matters, and that rigid enforcement of technical requirements against unrepresented litigants can result in manifest injustice. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (pro se pleadings held to less stringent standards). Permitting reconsideration to

accept Plaintiff's sworn declaration—which directly cures the identified deficiency—serves the interests of justice without prejudicing Defendant.

**III. PLAINTIFF'S CHALLENGE TO THE ENFORCEABILITY OF THE MAA IS CONSISTENT WITH, AND DOES NOT IMPLY, ACCEPTANCE OF THE MAA**

Plaintiff has consistently maintained two independent positions throughout this litigation: (1) he did not consent to the Mutual Arbitration Agreement; and (2) even if the MAA were deemed accepted, it is void and unenforceable.

These positions are legally distinct and not in conflict. Challenging the enforceability of a contract does not constitute acceptance of that contract. It is a standard and well-recognized approach in contract law to argue in the alternative: "I did not agree to this contract, but even if I did, it is unenforceable." Courts routinely accept such alternative arguments. See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically.").

To the extent the Court has interpreted Plaintiff's enforceability arguments as implicitly conceding the existence of an agreement, Plaintiff respectfully submits that this interpretation is erroneous. Plaintiff's assertion that the MAA is procedurally and substantively unconscionable has never been, and should not be read as, an admission that he agreed to its terms.

**IV. THE COURT SHOULD EXERCISE ITS DISCRETION TO RECONSIDER IN ORDER TO PREVENT MANIFEST INJUSTICE**

The evidence now before the Court, including the screenshot of the actual offer document and Plaintiff's sworn declaration, was not available to the Court when it ruled on Defendant's motion to compel arbitration. Plaintiff could not have submitted the screenshot earlier because he did not understand its legal significance as a pro se litigant; he did not know that documentary evidence of the contents of the offer document—as opposed to the offer document produced by Defendant after litigation commenced—would be dispositive. That understanding came only with further research and the development of Plaintiff's legal arguments.

Defendant, by contrast, was in possession of the Employment Agreement Acceptance Email (Exhibit A) at all times. Defendant knew that the email and the contemporaneous portal records would show exactly what was presented to Plaintiff. Defendant chose to produce only Exhibit D—a bare acceptance form—while withholding Exhibit A. This selective disclosure, combined with Defendant's silence regarding the evidentiary standard that would have armed Plaintiff to defeat the motion, constitutes circumstances warranting equitable relief under Rule 60(b)(6).

To deny reconsideration on these facts would be to permit Defendant to benefit from its own selective disclosure and from Plaintiff's ignorance of legal procedure—a result that no court committed to justice should sanction.

## V. THE COURT SHOULD ORDER TRIAL ON THE QUESTION OF ARBITRABILITY

Under 9 U.S.C. § 4, if the Court finds that there is a genuine issue of material fact as to whether the parties entered into a valid arbitration agreement, it shall "proceed summarily

to the trial thereof." The newly submitted Addepalli Declaration and Exhibit A create at minimum a triable issue as to whether Plaintiff ever viewed, was presented with, or consented to the Mutual Arbitration Agreement. The Court should therefore lift the stay, vacate the order compelling arbitration, and schedule a trial on the question of arbitrability.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

- Grant reconsideration of its Order dated August 15, 2025 (Dkt. No. 39) and/or its Order dated March 11, 2026 (Dkt. No. 50);
- Find that the newly submitted Exhibit A (Employment Agreement Acceptance Email and screenshot) and the Addepalli Declaration create a genuine issue of material fact as to whether Plaintiff ever accepted the Mutual Arbitration Agreement;
- Lift the stay of proceedings currently in place;
- Vacate the Order compelling arbitration; and
- Schedule a trial pursuant to 9 U.S.C. § 4 on the question of whether a valid arbitration agreement was formed.

In the alternative, if the Court declines to vacate the Order compelling arbitration, Plaintiff respectfully requests that the Court enter findings of fact regarding what was actually presented to Plaintiff in the candidate portal and order Defendant to produce all records

related to the contents of the candidate portal as made available to Plaintiff on October 30, 2019.

Dated : 15th March 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

Case: 1:24-cv-12933 Document #: 51 Filed: 03/15/26 Page 13 of 22 PageID #:306

## INDEX OF EXHIBITS

**Exhibit A:** Employment Agreement Acceptance Screenshot of the Offer of Employment as Presented to Plaintiff on October 30, 2019

**Exhibit B:** Employment Agreement Acceptance URL of the Offer of Employment as Presented to Plaintiff on October 30, 2019

**Exhibit C:** Defendant personnel instructing the Plaintiff to access the Offer of Employment thru the Employment Agreement Acceptance URL only.

**Exhibit D (Defendant's Exhibit):** Offer Acceptance Form for Addepalli Rao (Dkt. No. 12-4) – showing acceptance only, without reflecting the contents of what was accepted

**Declaration:** Declaration of Venkateswara Rao Addepalli in Support of Motion for Reconsideration

# EXHIBIT A

Infosys - Offer Acceptar

https://jobs.infosys.com/tgwebhost/cpview.aspx?t=^AEo4j_plu

Rao Addepalli
1050 Heather Street
Bolingbrook, Illinois 60490
(630) 752-8233

Dear Rao,

We at Infosys believe our employees are our most valued asset and key to us achieving our goals. It is our continuing ambition to find and retain people who believe in our values and share our desire to build a great Company. Based on our recent discussions with you and our review of your profile, it is with great pleasure that we offer you the below position with Infosys Limited in Vernon Hills, IL

Role Lead Consultant - US

Role Designation 2016BLCNUS : Lead Consultant

Your Personal Level will be 6.

With your acceptance of this offer, your employment start date is November 18, 2019. We request you to report in person for onboarding at TBD

Your current role has been classified as exempt in accordance with Federal Fair Labor Standards Act (FLSA) and applicable federal and state wage and hour laws. The Exempt or Non Exempt Status of your Role is determined by state and federal regulations and is subject to change from time to time. Any changes in the exemption status will be communicated to you.

Your role has associated billable and productivity expectations. It is expected that you will make efforts to find suitable client- billable assignments based on your skills and to maximize your utilization.

Due to the nature of this role, your actual work location may vary over time. While we do our best to match your qualifications and preferences to our client engagements, your continued employment with Infosys is contingent upon willingness to travel and/or relocate

Your fixed compensation will be USD 105689 per annum, skill allowance USD 69311 per annum and both will be paid in

## Offer Acceptance form - Addepalli, Rao

**Do you accept the offer?** I have read, understand and accept all the terms and conditions contained in this offer letter and attached annexures.

# EXHIBIT B

Infosys Offer Notification - Addepalli, Rao

Inbox

Inbox

- BrassRing

To: · Wed, Oct 30, 2019 at 11:28 AM

Visit site

**Message Body**

October 30, 2019

Hello Rao Addepalli.

Congratulations on your recent offer with Infosys. Your offer letter has been posted to your Candidate Portal. Please use the below link to access it:Candidate Zone - Application Documents & Forms

You will be required to login using your existing credentials (the same credentials you used to create your profile when applying for the position).

Please confirm whether you are accepting the offer using dedicated response form at the bottom of your offer letter.

Infosys is an organization that has built an outstanding reputation for exciting, innovative and quality products and services. Credit for this goes to every one of our employees. We look forward to you accepting our offer and becoming part of the Infosys team.

This email is an automated notification and replies to this address are not monitored. If you have any questions, please email reetesh.263232@infosys.com.

Regards,
Infosys Talent Acquisition

Infosys
Navigate your next

Infosys is an Equal opportunity Employer
EOE/Minority/Female/Veteran/Disabled/Sexual Orientation/Gender Identity/National Origin

# EXHIBIT C

Infosys Offer Notification

Inbox

Inbox

- REETESH SAXENA

To: me · Wed, Oct 30, 2019 at 12:13 PM

**Message Body**

Hi Rao,

Your offer has been released Shared @ your Yahoo Account. Kindly Login through your credentials, go to candidate zone and accept the offer.

Once you accept, Kindly provide me a confirmation mail

Regards,

Reetesh Saxena

Talent Acquisition Team

VOIP – + 1 - **972-801-6190**

Email – reetesh.263232@infosys.com

# EXHIBIT D

Case: 1:24-cv-12933 Document #: 12-4 Filed: 02/03/25 Page 2 of 3 PageID #:102

[illegible]

Print

[illegible] [illegible] [illegible]

Do you accept the offer? [illegible]

Case: 1:24-cv-12933 Document #: 12-4 Filed: 02/03/25 Page 3 of 3 PageID #:103

[illegible] [illegible] [illegible]

Close [illegible]

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I filed the foregoing Motion for Reconsideration with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated : 15th March 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

# TAB G

## Declaration of Venkateswara Rao Addepalli

Dkt. 52 — Filed March 15, 2026

BC

FILED
3/15/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
CVK

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| **Plaintiff,** | ) | **Case No.: 1:24-cv-12933** |
| **v.** | ) | **Judge Andrea R. Wood** |
| **INFOSYS LTD,** | ) | |
| **Defendant.** | ) | |

**DECLARATION OF VENKATESWARA RAO ADDEPALLI**
**IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DATED AUGUST 15, 2025 AND/OR ORDER DATED MARCH 11, 2026, BASED ON NEWLY DISCOVERED EVIDENCE AND PLAINTIFF'S SWORN DECLARATION**

I, Venkateswara Rao Addepalli, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

**Identity and Background**

1. I am the Plaintiff in the above-captioned action. I am over the age of 18. I am a United States citizen. I reside at 1850 Heather Street, Bolingbrook, Illinois 60490.
2. I was employed by Infosys Limited as a Lead Consultant from November 14, 2019, through June 30, 2023. My annual salary was $175,000.

**I Did Not Sign or Knowingly Agree to the Mutual Arbitration Agreement**

3. **I never signed the Mutual Arbitration Agreement ("MAA") attached as Exhibit C to Defendant's motion (Doc. #12-3) or as Attachment 2 to Doc. #40. I specifically, unequivocally, and categorically deny that I knowingly**

**entered into any agreement to waive my right to a jury trial or to submit employment disputes to binding arbitration with Infosys Limited.**

4. At no time during my employment with Infosys from November 14, 2019, through June 30, 2023, was I ever provided with a copy of the MAA. I was never asked to review, acknowledge, or sign the MAA after commencing employment. No Infosys representative ever explained to me that I had agreed to arbitrate employment disputes or that I had waived my right to a jury trial.

5. I did not have legal counsel at the time I responded to the offer of employment in October 2019. I was not advised by Infosys to consult an attorney before accepting the employment offer. I was not given meaningful time or guidance to understand the legal significance of the MAA.

6. I was never provided with a system-generated confirmation email from Infosys's Candidate Portal confirming my electronic acceptance of the offer or the MAA. The absence of such a confirmation is itself evidence that the acceptance process was not completed as Defendant claims.

**The Document Packet Was Not Validly Posted — Defendant's Own Records Confirm This**

7. Defendant's own Exhibit A to the Polanowski Declaration (Doc. #19-1) shows the document packet status as "Unposted." I did not access a validly posted document packet containing the MAA on October 30, 2019. I could not have reviewed, read, or meaningfully accepted a document that Defendant's own records confirm was not posted.

8. The email I received on October 30, 2019 (Exhibit B to the Polanowski Declaration) did not reference the Mutual Arbitration Agreement by name. It was a generic offer notification directing me to a portal. I was not informed by that email that one of the attachments was an agreement waiving my right to a jury trial.

**The MAA Was Concealed From Me and From Administrative Agencies**

9. During the entire period of my employment with Infosys, I was never informed that I was subject to a mandatory arbitration agreement. The MAA was never referenced in any communication I received from Infosys during my employment.

10. When I filed charges with the U.S. Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR), Infosys never disclosed the existence of the MAA in those proceedings. Infosys did not invoke the MAA as a defense in either administrative forum. I only became aware of the existence of the MAA when Infosys filed its Motion to Compel Arbitration in this federal action, years after my employment ended.

**The MAA Bears No Plaintiff Signature**

11. The copy of the MAA produced by Defendant (Doc. #40, pp. 18–24) bears the signature of Richard Lobo, EVP and Head of Human Resources for Infosys Limited. I did not sign the MAA. There is no signature line for me on the face of the MAA. There is no signature by me on the MAA.

**Governing Law Discrepancy**

12. The MAA states in Section XIII that it "shall be governed by the law of the State of Texas." I am an Illinois resident. I worked for Infosys from my home in Illinois. Defendant argued to this Court that Illinois law governs the contract formation question, which is inconsistent with the express terms of the MAA Defendant itself produced.

**Purpose of This Declaration**

13. I submit this Declaration to provide this Court with the sworn denial of arbitration consent that the Court's August 15, 2025 Stay Order indicated was necessary to create a genuine issue of material fact. *See* Stay Order at 3 (citing *Bradley v. Meijer Stores LP*, No. 23 CV 1269, 2023 WL 3042984 (N.D. Ill. Apr. 21, 2023)) ("a party's sworn statement that he did not sign an arbitration agreement — if spelled out in sufficient detail — is sufficient to create a genuine issue of fact necessitating a trial"). This Declaration provides exactly such a sworn, detailed denial.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of March, 2026.

**Venkateswara Rao Addepalli**

1850 Heather Street

Bolingbrook, IL 60490

Phone: 630-752-8233

Email: Rao_Add@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I filed the foregoing Declaration of Venkateswara Rao Addepalli with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated : 15th March 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

# TAB H

**Order Denying Plaintiff's Second Motion for Reconsideration**

Dkt. 60 — Entered June 23, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VENKATESWARA RAO ADDEPALLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-12933 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| INFOSYS LTD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff's second motion for reconsideration of the Court's order compelling arbitration and staying proceedings based on newly discovered evidence [51] is denied. For this Court to reconsider its interlocutory order pursuant to Fed. R. Civ. P. 54(b) based on newly discovered evidence, Plaintiff "must show not only that [the] evidence was newly discovered or unknown to [him] until after the [Court's order compelling arbitration], but also that [he] could not with reasonable diligence have discovered and produced such evidence" in connection with Defendant's motion to compel arbitration. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks omitted). But, as Plaintiff confirmed in open court, he possessed the evidence he presents as newly discovered long before this action was initiated but claims only recently to have discovered that he possessed that evidence. Plaintiff "cannot now introduce evidence to which [he] had access when [he] tendered [his] previous filings." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). While Plaintiff asks that his failure to discover the evidence earlier be excused on account of his limited resources, the Court is not persuaded that Plaintiff could not have discovered the evidence with reasonable diligence, even considering his *pro se* status. The newly discovered evidence consists of screenshots of the employment offer and acceptance documents that Defendant claims gave rise to Plaintiff's arbitration obligation and that Plaintiff admittedly captured and saved for his own records. Plaintiff fails to explain why he was unable to timely find, through reasonable diligence, evidence within his own records that was directly relevant to the motion to compel arbitration. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("Given the ease with which [the new evidence could have been discovered], it cannot be said that [the party] exercised due diligence."). Consequently, the stay in this case shall remain in place pending completion of arbitration proceedings. The telephonic status hearing set for 6/23/2026 is stricken. The deadline for the parties to file their joint status report is extended from 6/11/2026 to 7/23/2026. The joint status report shall set forth: (1) the status of the arbitration proceedings, and (2) whether any party believes circumstances have changed such that the stay of proceedings should be lifted. Notwithstanding the parties' obligation to file a joint status report, the parties shall promptly notify the Court upon conclusion of the arbitration proceedings.

Dated: June 23, 2026

Andrea R. Wood
United States District Judge

# TAB I

**Plaintiff's Motion to Lift the Stay and Allow the Case to Proceed in Court**

Dkt. 61 — Filed July 15, 2026

BC

FILED
7/15/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MPV

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VENKATESWARA RAO ADDEPALLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:24-cv-12933** |
| | ) | |
| **v.** | ) | **Judge Andrea R. Wood** |
| | ) | |
| **INFOSYS LTD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION TO LIFT THE STAY AND ALLOW THE CASE TO PROCEED IN COURT**

Plaintiff Venkateswara Rao Addepalli, proceeding pro se, respectfully moves this Court to Lift The Stay and Proceed with Discovery for the following reasons

1. PLAINTIFF'S ARGUMENT IN SUPPORT OF RECONSIDERATION OF THE ORDER DATED JUNE 23, 2026.
2. PLAINTIFF'S ARGUMENT IN SUPPORT OF RECONSIDERATION OF THE ORDER DATED MARCH 11, 2026.
3. PLAINTIFF'S ARGUMENT IN SUPPORT OF WHETHER THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE IS ONE FOR THE COURT ALONE TO DECIDE — NOT THE ARBITRATOR. AN ARBITRATOR HAS NO AUTHORITY TO RULE ON THE ENFORCEABILITY OF THE VERY AGREEMENT THAT WOULD GRANT THEM JURISDICTION IN THE FIRST PLACE.

## PLAINTIFF'S ARGUMENT IN SUPPORT OF RECONSIDERATION OF THE ORDER DATED JUNE 23, 2026

*Plaintiff respectfully submits the following argument, addressing each finding in the Court's Order of June 23, 2026, and supported by the legal authority set forth below.*

### I. Defendant Failed to Meet Its Burden of Proving a Valid Arbitration Agreement

Defendant was unable to produce any material evidence — no digital system logs, no emails, and no signed documents — establishing that the Mutual Arbitration Agreement was ever presented to or seen by Plaintiff. Defendant instead relies solely on unsubstantiated affidavits.

Under the Federal Arbitration Act, a court must determine that a valid agreement to arbitrate exists before compelling arbitration. 9 U.S.C. § 4; Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). The burden of proving the existence of that agreement rests with the party seeking to compel arbitration — here, Defendant. Bazemore v. Papa John's USA, Inc., 3 F.4th 832, 837 (6th Cir. 2021). Where the party opposing arbitration identifies specific evidence creating a material factual dispute as to formation, the court must proceed to trial on the question of arbitrability rather than resolve it on the papers. Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002).

Defendant's reliance on affidavits asserting, in general terms, that an arbitration agreement was part of the onboarding packet does not satisfy this burden where Plaintiff has produced primary, contemporaneous documentary evidence to the contrary. An affidavit restating a party's litigation position is not a substitute for the underlying record that would corroborate it.

## II. The Screenshot Does Not Support the Court's Characterization

The Order describes the newly discovered evidence as screenshots of "the employment offer and acceptance documents that Defendant claims gave rise to Plaintiff's arbitration obligation." This characterization is not supported by the content of the screenshot itself. The text visible in the screenshot does not reference the word "Arbitration," does not reference any "Attachment," and the position of the scroll bar shows that no further content was available to Plaintiff beyond what is depicted.

Courts addressing electronic-contract formation have consistently required that a party have "reasonable notice" of contract terms and that the party manifest assent to those specific terms before being bound. See Dhruva v. CuriosityStream, Inc., No. 23-1469, 2025 U.S. App. LEXIS 2341 (4th Cir. Mar. 12, 2025); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 233 (2d Cir. 2016). An attachment that is neither visible nor referenced anywhere in the materials a party actually viewed does not satisfy this standard. The screenshot, far from supporting Defendant's position, is direct evidence undermining it.

Exhibits B and C to Plaintiff's Motion for Reconsideration of Order Dated August 15, 2025 and/or Order Dated March 11, 2026, Based on Newly Discovered Evidence and Plaintiff's Sworn Declaration, consist of the emails Defendant sent directing Plaintiff to accept the offer of employment depicted in the screenshot. Neither email references the word "Arbitration" or the word "attachments" anywhere. These emails further undermine Defendant's position, since they confirm that at no point in the acceptance

process was Plaintiff put on notice of any arbitration term or any accompanying attachment.

To the extent the Court is weighing the screenshot against Defendant's affidavits describing what the onboarding portal contained, the screenshot is primary, contemporaneous evidence of the interface as it appeared at the moment of acceptance, while Defendant's affidavits are secondary evidence describing that same interface after the fact. See Fed. R. Evid. 1002, 1003. Where the two conflict, the contemporaneous record warrants particular weight, and at minimum establishes the genuine factual dispute described in Tinder, 305 F.3d at 735.

**III. The Court Did Not Address Evidence Already of Record**

The Order states that Plaintiff fails to explain why he could not have located this evidence sooner through reasonable diligence. Respectfully, the record does not support that conclusion. The screenshot of the employment agreement was attached to the original Complaint filed on December 16, 2024. It was discussed at length in the Memorandum of Law in Support of Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Lift Stay and Declare Arbitration Agreement Unenforceable, filed September 27, 2025, as Exhibit A. The evidence was therefore already before the Court well before the orders at issue. The supporting evidence for Exhibit A is included in Exhibits B and C, described above. Exhibits B and C are the only new evidences.

A motion for reconsideration based on newly discovered evidence requires a showing that the evidence was unknown and could not, with reasonable diligence, have been discovered earlier. Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d

1264, 1269 (7th Cir. 1996); see also Quaker Alloy Casting Co. v. Gulfco Indus., Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988) (a party may not introduce as "new" evidence to which it had access when it made its prior filings); Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000). Where the document was filed with the Court more than a year earlier and briefed in detail in a subsequent filing, the diligence inquiry is satisfied — the issue is not that Plaintiff failed to locate the evidence, but that the evidence was not given full consideration in the prior rulings.

**IV. Plaintiff's Pro Se Status Warrants Careful Consideration of the Full Record**

Plaintiff has proceeded throughout this litigation without counsel. Pro se filings are held to less stringent standards than pleadings drafted by attorneys, and courts have recognized that rigid, technical readings of a pro se litigant's filings can result in arguments or evidence being overlooked. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). This counsels in favor of the Court revisiting the full record — including the September 27, 2025 filing and its Exhibit A — to confirm that the screenshot evidence and its significance were fully considered before concluding that Plaintiff agreed to arbitrate.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its Order of June 23, 2026, fully account for the screenshot evidence already of record since December 16, 2024 and briefed on September 27, 2025 — together with the corroborating emails at Exhibits B and C — and find that a genuine issue of material fact exists as to whether a valid agreement to arbitrate was ever formed, warranting a

trial on arbitrability under 9 U.S.C. § 4 and Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002).

**PLAINTIFF'S ARGUMENT IN SUPPORT OF RECONSIDERATION OF THE ORDER DATED MARCH 11, 2026**

*Plaintiff respectfully submits the following argument, addressing each finding in the Court's Order of March 11, 2026, and supported by the legal authority set forth below.*

**Challenging Enforceability Does Not Concede Formation**

To the extent the Order treats Plaintiff's unconscionability and enforceability arguments as an implicit concession that an agreement was formed, that reading conflates two independent positions. Plaintiff has consistently maintained, in the alternative, that (1) he did not consent to the Mutual Arbitration Agreement, and (2) even if the Agreement were deemed accepted, it is void and unenforceable.

These positions are not in tension. Federal Rule of Civil Procedure 8(d)(2) expressly permits a party to plead claims or defenses in the alternative, including positions that would be inconsistent if both were proven. Fed. R. Civ. P. 8(d)(2). Arguing that a contract is unconscionable does not constitute acceptance of its terms, and Plaintiff's enforceability arguments should not be read as an admission of assent.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its Order of March 11, 2026, and clarify that Plaintiff's alternative arguments regarding the unconscionability and unenforceability of the Mutual Arbitration Agreement do not constitute, and should not be construed as, an admission that Plaintiff consented to or accepted that Agreement.

## <u>PLAINTIFF'S ARGUMENT IN SUPPORT OF WHETHER THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE IS ONE FOR THE COURT ALONE TO DECIDE — NOT THE ARBITRATOR. AN ARBITRATOR HAS NO AUTHORITY TO RULE ON THE ENFORCEABILITY OF THE VERY AGREEMENT THAT WOULD GRANT THEM JURISDICTION IN THE FIRST PLACE.</u>

Whether an arbitration agreement is enforceable is a threshold question reserved exclusively for the Court, not the arbitrator. See *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 796 (N.D. Ill. 2024) (disputes over the enforceability of an arbitration agreement are "presumptively for courts to decide"). Even where an agreement contains a delegation clause purporting to send that question to the arbitrator, such a clause is enforceable only if the party "clearly and unmistakably" agreed to it — which did not occur here. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010).

The Agreement should not be enforced. Although it recites that it is governed by the Federal Arbitration Act ("FAA") and by Texas law, the Employee performed his or her

work in Illinois, and Illinois — not Texas — supplies the controlling substantive law on the questions that matter here: whether the choice-of-law clause itself may stand, and whether the Agreement is unconscionable. Applying Illinois law, the Agreement fails for three independent reasons: (1) the Illinois Workplace Transparency Act voids the very choice-of-law clause Infosys will rely on; (2) the Agreement's delegation clause cannot shield the Agreement from judicial scrutiny because the delegation clause is itself procedurally and substantively defective; and (3) the Agreement as a whole is unconscionable under settled Illinois law because it was presented on a non-negotiable, adhesive basis and because it reserves a judicial forum for Infosys's own claims against the Employee while compelling arbitration of every claim the Employee could bring against Infosys. Each ground is sufficient on its own to defeat enforcement.

It designates Texas law as governing "this Agreement and its interpretation, validity, construction, enforcement and performance" (Section XIII), while separately providing that arbitration will take place "in the county in which the Signer applied to work, works, or worked" (Section VIII) — here, a county in Illinois. Section III designates the Arbitrator, not any court, as having "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" (the delegation clause), while separately carving out from arbitration "claims for collection of debt or other damages from Signer owed to Infosys due to fraudulent expense reimbursement requests or using the Infosys corporate credit card for personal and/or unauthorized purchases" — claims that, by their nature, only Infosys could bring.

**A. Illinois Law Governs the Threshold Questions of Choice-of-Law and Enforceability, Notwithstanding the Agreement's Texas Clause.**

**1. Illinois has the materially greater interest in this dispute.**

A contractual choice-of-law clause does not override the law of the state with the greater material interest in the dispute where enforcement of the clause would be contrary to that state's fundamental policy. Restatement (Second) of Conflict of Laws § 187; Employers Ins. of Wausau v. Ehlco Liability Ins. Co., 186 Ill.2d 127, 150 (1999). The Employee lived and worked in Illinois; the employment relationship, and any discrimination, harassment, wage, or retaliation claim arising from it, is centered in Illinois. Infosys's only connection to Texas is the address of its registered agent for service of process (Section VI). Illinois, not Texas, is the state with the materially greater interest in whether its resident employees can be compelled into a distant, employer-selected legal regime as a non-negotiable condition of applying for a job.

**2. The Illinois Workplace Transparency Act independently voids the Texas choice-of-law clause.**

Even apart from common-law conflicts principles, the Illinois Workplace Transparency Act ("IWTA"), 820 ILCS 96/1-1 et seq., as amended by Public Act 104-0320 (eff. Jan. 1, 2026), directly and specifically prohibits the clause Infosys seeks to enforce. The IWTA provides that a "unilateral condition of employment or continued employment" may not apply non-Illinois law to an Illinois employee's claim, may not require a non-Illinois venue to adjudicate an Illinois employee's claim, and is void to the extent it deprives the employee of a substantive or procedural right or remedy concerning an "unlawful employment practice" — a term the statute defines broadly to reach discrimination,

harassment, retaliation, and any other practice made unlawful under state or federal employment law. 820 ILCS 96/1-1, 1-25, as amended.

Section XIII of the Agreement is precisely this kind of unilaterally imposed term. It was not separately negotiated, no consideration was allocated specifically to it, and the Agreement contains none of the acknowledgments the amended IWTA requires before such a clause may be validly imposed even as a purportedly "mutual" condition. The Texas choice-of-law clause is therefore void under Illinois statute, and Illinois law — including Illinois's unconscionability doctrine discussed in Section III.C below — governs the remainder of the Agreement.

This statutory argument does not depend on, and is not foreclosed by, the FAA's preemption of state rules that single out arbitration for disfavored treatment. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011). The IWTA's choice-of-law and venue provisions are not arbitration-specific; they void offending choice-of-law and venue terms in any unilaterally imposed employment contract, whether or not it involves arbitration. A generally applicable rule of this kind — unlike a rule that bans arbitration outright, cf. Chamber of Commerce of the United States v. Bonta, 62 F.4th 473 (9th Cir. 2023) (FAA preempted California's flat ban on mandatory employment arbitration, AB 51) — falls within the category of ordinary contract law the FAA's savings clause preserves. 9 U.S.C. § 2.

**B. The Court, Not the Arbitrator, Must Decide the Enforceability of the Agreement, Because the Delegation Clause Is Itself Invalid.**

Section III purports to delegate all questions of the Agreement's "interpretation, applicability, enforceability or formation" to the arbitrator. Ordinarily, a valid delegation clause requires that a challenge to the arbitration agreement's validity be decided by the arbitrator rather than a court. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70-72 (2010). But a delegation clause is enforceable only if it is itself valid — and where, as here, the delegation clause was imposed in exactly the same non-negotiated, adhesive manner as the rest of the Agreement, and suffers from the same substantive one-sidedness (discussed below), the delegation clause is unconscionable in its own right and cannot strip this Court of authority to decide the threshold question. Id. at 71 (unconscionability challenge must be specifically directed at the delegation provision, but where it is, the court decides it).

Notably, the Agreement itself recognizes the limits of the delegation clause: Section IV expressly reserves to "a court of competent jurisdiction" — not the arbitrator — any challenge to the enforceability of the Class Action Waiver or Representative Action Waiver. Infosys cannot consistently argue that every other enforceability question must go to the arbitrator while conceding that these particular enforceability questions belong in court. The more coherent reading — and the one consistent with Illinois's approach to severability and adhesive contracts — is that the entire Agreement, including the delegation clause, must survive ordinary unconscionability scrutiny in this Court before any part of the dispute may be sent to arbitration.

**C. The Agreement Is Unconscionable Under Illinois Law.**

Illinois applies a sliding-scale unconscionability analysis that considers both procedural unconscionability (the circumstances of contract formation) and substantive unconscionability (the fairness of the terms themselves), with a stronger showing on one axis reducing what is required on the other. Kinkel v. Cingular Wireless LLC, 223 Ill.2d 1, 20-28 (2006); Razor v. Hyundai Motor America, 222 Ill.2d 75, 99-100 (2006). Both are present here.

**1. The Agreement is procedurally unconscionable.**

Procedural unconscionability under Illinois law turns on disparity in bargaining power, whether a term was buried in a lengthy or complex document, and whether the weaker party had any realistic opportunity to negotiate or decline. Kinkel, 223 Ill.2d at 22-23. The Agreement here checks every box: it was presented as "Attachment 2" to a standardized employment-application packet; acceptance was required to proceed with the application; and there is no indication the Employee could have struck, modified, or negotiated a single term. The Agreement's own recital that the Employee was "advised to consult with an attorney" and "had an opportunity to do so" is boilerplate that does not, standing alone, establish a genuine opportunity to negotiate; Illinois courts look past such recitals to the real circumstances of presentation. See Kinkel, 223 Ill.2d at 22-23 (procedural unconscionability assessed by the actual manner of contract formation, not the contract's self-description).

**2. The Agreement is substantively unconscionable because it lacks a modicum of bipolarity.**

Substantive unconscionability looks to whether contract terms are so one-sided as to oppress or unfairly surprise an innocent party. Razor, 222 Ill.2d at 100. An arbitration agreement that compels the weaker party to arbitrate the claims that party is most likely to bring, while reserving a judicial forum for the claims the stronger party is most likely to bring, lacks the necessary mutuality and is unconscionable for that reason. See Ferguson v. Countrywide Credit Industries, Inc., 298 F.3d 778, 785-86 (9th Cir. 2002) (applying this "modicum of bipolarity" principle to invalidate a one-sided employment arbitration agreement).

That is exactly this Agreement. Section III excludes from arbitration "claims for collection of debt or other damages from Signer owed to Infosys due to fraudulent expense reimbursement requests or using the Infosys corporate credit card for personal and/or unauthorized purchases" — claims only Infosys could ever bring — while requiring the Employee to arbitrate the entire universe of claims an employee could bring against an employer: discrimination, harassment, retaliation, defamation, wage and hour, breach of fiduciary duty, and every statutory claim under Title VII, the ADA, the ADEA, the FMLA, and comparable Illinois law. Infosys retains an unconditional right to sue the Employee in court on its own claims; the Employee has no reciprocal right to sue Infosys in court on any claim, however serious. The Agreement's recital that the parties "mutually" agree to arbitrate (Section II) does not cure this asymmetry — the actual allocation of forum rights is one-sided, and Illinois courts look to substance over label. Kinkel, 223 Ill.2d at 28.

This substantive one-sidedness, combined with the procedural unconscionability described above, satisfies Illinois's sliding-scale test and independently renders the

Agreement — and, for the reasons in Section III.B above, the delegation clause specifically — unenforceable.

**D. To the Extent the Employee's Claims Involve Sexual Harassment or Sexual Assault, the Agreement Is Unenforceable Under Federal Law Regardless of Any State-Law Argument.**

If any of the Employee's claims allege conduct constituting sexual harassment or sexual assault, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401-402, independently and categorically bars enforcement of the Agreement as to those claims, at the Employee's election, notwithstanding any pre-dispute arbitration clause. 9 U.S.C. § 402(a). Courts applying the EFAA have held that where a complaint includes even one sexual-harassment-related claim, the arbitration agreement is unenforceable as to the entire case, not merely the harassment claim. Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563, 587-90 (S.D.N.Y. 2023). This provides an independent and complete basis to litigate in court, without regard to the choice-of-law or unconscionability arguments above.

**IV. Conclusion**

For each of the foregoing reasons — the Illinois Workplace Transparency Act's direct invalidation of the Texas choice-of-law clause, the invalidity of the delegation clause, the Agreement's procedural and substantive unconscionability under Illinois law, and, if applicable, the EFAA — the Mutual Arbitration Agreement should not be enforced, and the Plaintiff's claims should proceed in court.

**WHEREFORE, Plaintiff respectfully requests that this Court enter an order declaring that the Mutual Arbitration Agreement did not exist and/or is unenforceable.**

Dated : 15th July 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I filed the foregoing MOTION TO LIFT THE STAY AND ALLOW THE CASE TO PROCEED IN COURT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated : 15th July 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

# TAB J

**Order Denying Plaintiff's Third Motion for Reconsideration**

Dkt. 62 — Entered August 24, 2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VENKATESWARA RAO ADDEPALLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-12933 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| INFOSYS LTD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The Court construes Plaintiff's motion to lift the stay and allow the case to proceed in court [60] as a third motion for reconsideration. That motion is denied. As this Court has previously advised, a motion for reconsideration under Federal Rule of Civil Procedure 54(b) "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks omitted). Plaintiff's latest motion seeks to reargue the same issues that this Court has already decided in its order compelling arbitration and staying proceedings and its subsequent orders denying Plaintiff's two prior motions for reconsideration of that order compelling arbitration. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* at 1270. Consequently, the stay in this case shall remain in place pending completion of arbitration proceedings. By 9/14/2026, the parties shall file a joint status report regarding the status of the arbitration proceedings, including whether such proceedings have been initiated. To the extent Plaintiff does not intend to initiate arbitration proceedings, he should indicate that intention in the joint status report so that the Court may determine whether the case should be dismissed.

Dated: August 24, 2026

Andrea R. Wood
United States District Judge

# TAB K

**Plaintiff's Motion to Stay Arbitration Proceedings Pending the Filing and Disposition of a Petition for Writ of Mandamus**

Dkt. 63 — Filed August 25, 2026 (undecided)

BC

FILED
8/25/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

VW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VENKATESWARA RAO ADDEPALLI, | ) | |
| Plaintiff, | ) | Case No.: 1:24-cv-12933 |
| v. | ) | Judge Andrea R. Wood |
| INFOSYS LTD, | ) | |
| Defendant. | ) | |

# PLAINTIFF'S MOTION TO STAY ARBITRATION PROCEEDINGS PENDING THE FILING AND DISPOSITION OF A PETITION FOR WRIT OF MANDAMUS

Plaintiff Venkateswara Rao Addepalli, appearing pro se, respectfully moves this Court, pursuant to its inherent authority to control the disposition of the causes on its docket, Landis v. North American Co., 299 U.S. 248, 254 (1936), and pursuant to Federal Rule of Appellate Procedure 8(a)(1), for an order staying the arbitration proceedings between Plaintiff and Defendant Infosys Ltd. ("Infosys") pending Plaintiff's filing of, and the Seventh Circuit's disposition of, a petition for a writ of mandamus challenging this Court's orders compelling arbitration and denying reconsideration. In support of this Motion, Plaintiff states as follows:

## INTRODUCTION

1. This Court has repeatedly declined to revisit its order compelling Plaintiff to arbitrate his employment discrimination and retaliation claims against Infosys. Because an order compelling arbitration and staying (rather than dismissing) an action is not ordinarily immediately appealable under 9 U.S.C. § 16(b), Plaintiff intends to seek review of that order by petitioning the United States Court of Appeals for the Seventh Circuit for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a).

2. Plaintiff files this Motion first in this Court, as required by Federal Rule of Appellate Procedure 8(a)(1), to request a short stay of the arbitration proceedings so that the mandamus petition is not rendered moot, and so that the Seventh Circuit is not required to resolve, in the first instance, a request that should ordinarily be presented here first.

3. Plaintiff respectfully submits that, in light of this Court's prior rulings on reconsideration, this Motion may be denied summarily; if so, Plaintiff intends to renew this stay request before the Seventh Circuit together with his mandamus petition, citing this Court's denial as satisfying the requirement of Rule 8(a)(2)(A)(i) that a movant show the district court denied the requested relief.

## PROCEDURAL BACKGROUND

4. Plaintiff filed this action on January 2, 2025, alleging discrimination on the basis of national origin, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Dkt. 1.)

5. On February 3, 2025, Infosys moved to compel arbitration and to dismiss or stay the action, relying on a Mutual Arbitration Agreement it contended Plaintiff had executed. (Dkt. 12.)

6. On August 15, 2025, the Court granted Infosys's motion, compelled arbitration, and stayed the action pending completion of arbitration proceedings pursuant to 9 U.S.C. § 3. (Dkt. 39.)

7. Plaintiff subsequently moved, on more than one occasion, for reconsideration of that order — including on the basis of a sworn declaration and documentary evidence disputing that he ever accepted the arbitration agreement. (Dkt. 40; Dkt. 51.) The Court denied each such motion, including most recently by order dated August 24, 2026, which construed Plaintiff's motion to lift

the stay as a third motion for reconsideration and denied it. (Dkt. 62; see also Dkt. 50 (Mar. 11, 2026 order); Dkt. 60 (June 23, 2026 order).)

8. The Court's August 24, 2026 order directs the parties to file a joint status report by September 14, 2026 addressing, among other things, whether arbitration proceedings have been initiated. (Dkt. 62.)

9. Parties have not initiated any Arbitration process till date including demand has not been filed with an arbitral forum, no arbitrator has been appointed, and no hearing or other deadline has been scheduled.

10. Plaintiff intends to file a petition for a writ of mandamus with the United States Court of Appeals for the Seventh Circuit within 21 days of this Motion being disposed, challenging the Court's order compelling arbitration and its subsequent denials of reconsideration on the ground that no valid agreement to arbitrate was ever formed.

## LEGAL STANDARD

11. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). A district court may exercise that authority to stay proceedings — including proceedings it has itself ordered, such as arbitration compelled under 9 U.S.C. § 3 — pending review of its own order by a higher court.

12. Federal Rule of Appellate Procedure 8(a)(1)(A) provides that "[a] party must ordinarily move first in the district court for… a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A). Courts have applied this same ordering requirement where a party

seeks a stay pending a petition for an extraordinary writ, such as mandamus, rather than a conventional appeal. A party may seek relief directly from the court of appeals only upon a showing that moving first in the district court would be impracticable, or that the district court denied the requested relief. Fed. R. App. P. 8(a)(2)(A)(i)–(ii).

13. In deciding whether to grant a stay pending review, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder. 556 U.S. 418, 434 (2009) (internal quotation marks omitted).

14. A writ of mandamus is available only where the petitioner establishes: (1) that he has no other adequate means to attain the relief he desires; (2) that his right to the writ is clear and indisputable; and (3) that the issuing court is satisfied, in its discretion, that the writ is appropriate under the circumstances. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380–81 (2004). Plaintiff cites this standard here because the strength of a prospective mandamus petition bears directly on the first Nken factor (likelihood of success) and because it underscores why a stay of arbitration — not merely eventual appellate review — is necessary to preserve any meaningful remedy.

## ARGUMENT

**I. A Stay Is Necessary Because Orders Compelling Arbitration Are Not Ordinarily Immediately Appealable, and Arbitration Proceeding to Conclusion Would Moot Mandamus Review.**

15. Under 9 U.S.C. § 16(b), an order compelling arbitration and staying (rather than dismissing) the underlying action is interlocutory and not immediately appealable as of right. Absent a stay,

arbitration will proceed — and may conclude, including through entry of a final award — before the Seventh Circuit has an opportunity to consider whether this Court's order compelling arbitration was properly entered in the first place. That sequence would moot or substantially undermine any mandamus relief Plaintiff might otherwise obtain, because an award rendered by an arbitrator who Plaintiff contends never had jurisdiction over the dispute cannot readily be undone after the fact. This is precisely the kind of harm a stay pending review is designed to prevent.

**II. Plaintiff Presents a Substantial Question Going to the Existence of Any Agreement to Arbitrate.**

16. Plaintiff does not ask this Court to relitigate the merits of arbitrability in this Motion. Plaintiff notes, however, for purposes of the first Nken factor, that his opposition to arbitration rests on a sworn denial that he ever accepted the Mutual Arbitration Agreement, together with contemporaneous documentary evidence — a screenshot of the offer materials he actually viewed and accepted — that does not include the arbitration agreement Infosys relies upon. Under Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002), a party opposing arbitration is entitled to a trial on arbitrability where he demonstrates a genuine issue of material fact concerning the existence of an agreement to arbitrate. Plaintiff's mandamus petition will present this question to the Seventh Circuit, and a stay preserves that question for meaningful review rather than allowing it to be overtaken by events.

**III. Plaintiff Will Suffer Irreparable Harm Absent a Stay.**

17. If arbitration proceeds and concludes while Plaintiff's mandamus petition is pending, Plaintiff will have been forced to submit disputed employment discrimination and retaliation claims to a

private arbitrator notwithstanding his sworn, unrebutted-at-this-stage denial that he ever agreed to arbitrate. The loss of the opportunity to litigate those claims in an Article III forum — if Plaintiff is correct that no valid arbitration agreement exists — cannot be remedied after an arbitration award has issued. This is the type of harm that cannot be undone through a later appeal and therefore satisfies the irreparable injury requirement.

**IV. A Short Stay Will Not Substantially Injure Infosys.**

18. A stay limited to the pendency of Plaintiff's mandamus petition imposes, at most, a delay on Infosys. Infosys identifies no prejudice from such a delay beyond the ordinary cost of awaiting appellate resolution of a threshold jurisdictional question — whether any agreement to arbitrate exists at all — that goes to whether Infosys may compel arbitration in the first place.

**V. The Public Interest Favors Resolving the Threshold Question of Arbitrability Before the Parties Proceed to Arbitration.**

19. The public has an interest in ensuring that parties are bound to arbitrate only disputes they actually agreed to arbitrate, and in avoiding the expenditure of judicial, arbitral, and party resources on proceedings that may ultimately be vacated as having proceeded without a valid agreement. A brief stay serves that interest by allowing the Seventh Circuit to resolve the threshold arbitrability question before, rather than after, an arbitration award issues.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court stay the arbitration proceedings between Plaintiff and Infosys pending Plaintiff's filing of a petition for a writ of mandamus with the United States Court of Appeals for the Seventh Circuit and that court's

disposition of the petition, and grant such other and further relief as the Court deems just and proper.

Dated : 25th August 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, I filed the foregoing PLAINTIFF'S MOTION TO STAY ARBITRATION PROCEEDINGS PENDING THE FILING AND DISPOSITION OF A PETITION FOR WRIT OF MANDAMUS with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated : 25th August 2026

Respectfully submitted

Venkateswara Rao Addepalli

1850 Heather Street

Bolingbrook IL 60490

Phone : 630-752-8233

Email : Rao_Add@yahoo.com

# TAB L

**Correspondence Regarding Incomplete/Inaccurate Transcript of the October 30, 2025 Hearing**

Transcript Order No. 53679

# MESSAGES TO REPORT INCOMPLETE AND/OR INACCURATE TRANSCRIPT OF THE COURT HEARING HELD ON 10/30/2025

Transcript order # 53679

Inbox

Inbox

- Message 1 of 4. For JAWS, turn virtual PC Cursor on if needed.

Brenda Varney

To: me · Wed, Nov 5, 2025 at 1:06 PM

**Message Body**

Dear Addepalli,

Attached is the transcript for the above order as well as a copy of your paid invoice. Please confirm receipt of these items.

Thank you,

--

*Brenda S. Varney, CSR, RDR, CRR*

Official Court Reporter to the Honorable Andrea R. Wood

United States District Court for the Northern District of Illinois

219 South Dearborn Street, Suite 2144D

Chicago, Illinois 60604

(312) 554-8931

brenda_varney@ilnd.uscourts.gov

rao add

To: Brenda · Fri, Jun 26 at 8:35 AM

**Message Body**

Hi Brenda Varney

This transcript may be incomplete. Please describe to me the complete process step-by-step in detail from the time of the court hearing to the time you email me the transcript.

I would really appreciate your help in this matter.

Feel free to contact me for further information.

Thanks and regards

Rao Addepalli

rao add

To: Brenda · Tue, Aug 25 at 10:48 AM

**Message Body**

Hi Brenda

Please send us a complete transcript of the court hearing held on 30 October 2025. The transcript copy you emailed us may be incomplete. We emailed you on 26 June 2026 and got no response.

Please do the needful and communicate the same to us at the earliest.

Feel free to contact me for further information.

Thanks and regards

Rao Addepalli

---

Brenda Varney

To: me · Tue, Aug 25 at 11:27 AM

**Message Body**

Mr. Addepalli,

The transcript you have received is the complete transcript of your hearing that day from the time the case was called until the hearing was adjourned. I have double checked, and the transcript is certified by myself to be full and complete. I am not sure what you think is missing. Please let me know.

Thank you,

Brenda

--

*Brenda S. Varney, CSR, RDR, CRR*

Official Court Reporter to the Honorable Edmond E. Chang

United States District Court for the Northern District of Illinois

219 South Dearborn Street, Suite 2342

Chicago, Illinois 60604

(312) 554-8931

brenda_varney@ilnd.uscourts.gov

---

Message sent to the clerk of the court

Cc: windycitysteno@gmail.com

Dated : 08/28/2026

**Re: Case No. 24-cv-12933, Venkateswara Rao Addepalli v. Infosys Limited**

To Whom It May Concern:

I am the pro se plaintiff in the above-referenced case, pending before the Honorable Andrea R. Wood. I am writing to request a copy of the source audio recording of the court hearing held on October 30, 2025.

I have reviewed the written transcript of that hearing and have concerns that it may be incomplete and/or inaccurate. I previously attempted to resolve this issue directly with Ms. Brenda S. Varney, the Official Court Reporter for Judge Wood, but was unable to obtain a satisfactory resolution.

Given the importance of an accurate record in this matter, I respectfully request that I be provided with a copy of the audio recording so that I may verify the transcript against it. Please let me know if any additional information, forms, or fees are required to process this request.

I can be reached at 630-752-8233 or Rao_Add@yahoo.com should you need further information.

Thank you for your time and assistance.

Respectfully,

Venkateswara Rao Addepalli
Plaintiff, Pro Se
Case No. 24-cv-12933






RE: Case No. 24-cv-12933, Venkateswara Rao Addepalli v. Infosys Limited

Inbox

Inbox

- Message 1 of 1. For JAWS, turn virtual PC Cursor on if needed.

Ilnd_courtservices

To: me, and 1 other, Cc: windycitysteno@gmail.com · Mon, Aug 31 at 9:21 AM

**Message Body**

Hello,

Could you please let us know what you believe is inaccurate or missing from the 10/30/25 proceeding transcript in 24-C-12933, Addepalli v Infosys, before Judge Wood. Do you have page and line numbers?

I have spoken to Brenda Varney, who is now back in the office after having been out of the office the latter part of last week. She has checked and rechecked her steno notes and the certified transcript and indicates there is nothing that is inaccurate or missing. Any transcripts are required to be certified by Court Reporters to be true and correct.

District Court Judges do not have sound systems in their courtrooms because they have assigned Court Reporters. Any audio that is part of a Court Reporter's software is their own personal property. Please see the Guide to Judiciary Policy language below:

Per the Guide, 510.40.10(c) Backup Recordings

(1) This provision does not apply to court reporters' backup recordings used to augment the steno notes. Backup recordings made by court reporters for their own convenience and not otherwise required by 28 U.S.C. § 753 are the personal property of the court reporter.

(2) There is no public entitlement to these recordings, or to backup recordings made for the convenience of the court, with the exception of recordings of arraignments, changes of plea, and sentencings filed with the clerk of court, which are covered above in § 510.40.10(b).

Thank you.

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026, I caused a true and correct copy of the foregoing Appendix for Writ of Mandamus, together with all supporting materials, to be served on counsel of record for Respondent Infosys Ltd. and on the Honorable Andrea R. Wood, United States District Judge for the Northern District of Illinois, by the methods required by Federal Rule of Appellate Procedure 21(a)(1), including by electronic and/or first-class mail.

Dated: September 3, 2026

Respectfully submitted,

Venkateswara Rao Addepalli
Petitioner, Pro Se
1850 Heather Street
Bolingbrook, Illinois 60490
Telephone: (630) 752-8233
Email: Rao_Add@yahoo.com

VENKATESWARA RAO ADDEPALLI
1850 HEATHER St
BOLINGBROOK IL 60490

Retail

UNITED STATES POSTAL SERVICE

60604

RDC 03

U.S. POSTAGE PAID
PM
NAPERVILLE, IL 60540
SEP 06, 2026

$18.00

S2324E501013-04

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

9589 0710 5270 4088 6496 15

CERTIFIED

FIRST CLASS MAIL

**Judge Andrea R. Wood**
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
Everett McKinley Dirksen United States Courthouse,
219 S. Dearborn Street,
Room 1732,
Chicago, IL 60604.

RECEIVED
SEP 10 2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT